[Civ. No. 47698. First Dist., Div. Four. Nov. 20, 1979.]

ERNEST GRAHAM et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent,
THE PEOPLE, Real Party in Interest.

[Civ. No. 47723. First Dist., Div. Four. Nov. 20, 1979.]

ERNEST GRAHAM, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

---

**COUNSEL**

Larson, Weinberg & Harris, James Larson, Doron Weinberg, Carrow, Forest & Jordan, Robert D. Carrow and Phillip J. Abrams for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and William D. Stein, Deputy Attorney General, for Real Party in Interest.

---

**OPINION**

**CHRISTIAN, J.**—Ernest Graham and Eugene Allen seek a writ of mandate in 1/Civil 47698 to determine that the mandatory death penalty provision of Penal Code section 4500, effective at the time of the offense with which they are charged, is unconstitutional.

The Supreme Court has recited the facts in an earlier appeal involving these petitioners as follows:

"On November 27, 1973, a state correctional officer was assaulted and stabbed numerous times while on duty in Deuel Vocational Institute, a state prison facility; the officer died the same day as a result of the injuries sustained in the attack. On December 5, 1973, the San Joaquin County Grand Jury returned a two-count indictment against

defendants as a result of the incident; the indictment charged both with violation of Penal Code section 187 (murder) and section 4500 (aggravated assault by a life prisoner).

"On October 7, 1974, just prior to the first trial in this matter, the superior court dismissed the murder charge against each defendant upon motion of the district attorney; as a consequence, the two defendants went to trial solely on the section 4500 charges. The jury in the initial trial could not agree on a verdict and a mistrial was declared. Thereafter, defendants' motion for change of venue was granted and the case was transferred to the San Francisco Superior Court." (*People* v. *Allen* (1979) 23 Cal.3d 286, 290 [152 Cal.Rptr. 454, 590 P.2d 30].)

"On March 31, 1976, the jury returned a verdict finding both defendants guilty of violating Penal Code section 4500. On April 2, 1976, pursuant to the mandatory provisions of section 4500, the trial court sentenced each of the defendants to death. On appeal, defendants challenge both their convictions and their death sentences." (*Id.,* at p. 292.)

On automatic appeal, the Supreme Court reversed the judgment, holding that petitioners had established a prima facie case of unconstitutional use of peremptory challenges. The case was remanded for a new trial. (*Id.,* p. 295.)

Counsel for petitioners moved in the trial court for an order determining that the mandatory death penalty provisions of Penal Code section 4500 are unconstitutional. The motion was denied, and the present writ proceeding ensued.

■ In 1973, at the time of the attack which gave rise to the charges against petitioners, section 4500[1] provided a mandatory death penalty for malicious assault upon a noninmate by a person undergoing a life sentence if the victim dies.[2] Petitioners contend the provision is unconstitutional because it does not allow mitigating factors to be taken into account in the sentencing of the prisoner convicted of the assault.

---

[1] All statutory references herein are to the Penal Code.

[2] At the time of the offense, section 4500 read as follows: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another, other than another inmate, with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, or the person

In 1976, the United States Supreme Court evaluated the capital punishment systems of several states to determine whether they met constitutional requirements for imposition of the death penalty. (*Roberts* v. *Louisiana* (1976) 428 U.S. 325 [49 L.Ed.2d 974, 96 S.Ct. 3001]; *Woodson* v. *North Carolina* (1976) 428 U.S. 280 [49 L.Ed.2d 944, 96 S.Ct. 2978]; *Jurek* v. *Texas* (1976) 428 U.S. 262 [49 L.Ed.2d 929, 96 S.Ct. 2950]; *Proffitt* v. *Florida* (1976) 428 U.S. 242 [49 L.Ed.2d 913, 96 S.Ct. 2960]; *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909].) In these cases the court declared that the death penalty statutes reviewed in the earlier case of *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], "were unconstitutional, not because they conferred discretion upon the sentencing authority, but because the discretion conferred was 'standardless.'" *(Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 446 [134 Cal.Rptr. 650, 556 P.2d 1101].) Mandatory standardless statutes were held to be unsatisfactory responses to the *Furman* decision, and the United States Supreme Court struck down the North Carolina and Louisiana statutes as constitutionally unacceptable. In these cases, and in the death penalty cases which followed, however, the Supreme Court has specifically *not* held that all mandatory death penalty statutes would be constitutionally defective. For instance, in *Gregg* v. *Georgia, supra,* 428 U.S. at page 186 [49 L.Ed.2d at page 882], the court remarked that "there are some categories of murder, such as murder by a life prisoner, where other sanctions may not be adequate." In *Woodson* v. *North Carolina, supra,* 428 U.S. at page 287, footnote 7 [49 L.Ed.2d at p. 951], the same justices noted: "This case does not involve a mandatory death penalty statute limited to an extremely narrow category of homicide, such as murder by a prisoner serving a life sentence, defined in large part in terms of the character or record of the offender. We thus express no opinion regarding the constitutionality of such a statute. See n. 25, *infra.*" (See also *Lockett* v. *Ohio* (1978) 438 U.S. 586, 604, fn. 11 [57 L.Ed.2d 973, 990, 98 S.Ct. 2954]; *Roberts* v. *Louisiana* (1977) 431 U.S. 633, 637, fn. 5 [52 L.Ed.2d 637, 642, 97 S.Ct. 1993]; *Roberts* v. *Louisiana, supra,* 428 U.S. 325, 334, fn. 9 [49 L.Ed.2d 974, 982].)

so assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same, and the matter of punishment shall be determined as provided in Section 190.1 of this code. For the purpose of computing the days elapsed between the commission of the assault and the death of the person assaulted, the whole of the day on which the assault was committed shall be counted as the first day.

"Any person who, under this section, is punished by imprisonment rather than death, shall be required to serve his sentence consecutively to any sentence he is presently serving."

The California Supreme Court has held unconstitutional the California statutory scheme which permitted the imposition of the death penalty as punishment for first degree murder when any of the special circumstances charged in an accusatory pleading was found by the trier of fact. The majority opinion did not mention the mandatory death penalty of section 4500 but concluded in its discussion of *Gregg* v. *Georgia:* "The aspects of the Georgia scheme which a majority of the court considered essential to its constitutionality therefore appear to be the narrowly defined aggravating factors or categories of murder for which capital punishment is authorized and the opportunity for the defendant to present evidence and argument on and to have the jury consider mitigating circumstances with respect to both the commission of the offense and his personal characteristics which militate against imposition of the extreme penalty." (*Rockwell* v. *Superior Court, supra,* 18 Cal.3d 420, 432; see also *People* v. *Frierson* (1979) 25 Cal.3d 142, 176 [158 Cal.Rptr. 281, 599 P.2d 587].)

The People contend that former section 4500 is so narrowly drawn that its definition manifests an adequate consideration of aggravating and mitigating factors: it applies the mandatory death penalty only to a malicious killing and only to a life prisoner. These qualifications, however, encompass a wide range of personal culpability. A malicious killing not covered by section 4500 may be either first or second degree murder, a division made in recognition of the "difference in the quantum of personal turpitude of the offenders." (*People* v. *Holt* (1944) 25 Cal.2d 59, 89 [153 P.2d 21].) The classification of life prisoner covers an even broader range of culpability as well as 57 percent of the 1973 prison population. Under the indeterminate sentencing law in effect at the time of the offense, a life prisoner could be serving a sentence for first degree murder or a sentence for robbery of the second degree. Section 4500, therefore, could apply to a person who might hope to be released from prison in months as well as to one who might expect to remain there for many years.

The Supreme Court of Rhode Island recently considered the constitutionality of a death penalty statute enacted in response to a series of disturbances at Rhode Island prisons which culminated in the killing of a prison guard. The statute provided a mandatory death penalty for any person who committed murder while confined in prison. Although this statute applies to all prisoners, not just to all prisoners serving a life term, it was not an analysis of the classification that prompted the court to hold the statute unconstitutional. The statute was held to be defective

because it contained "no provision for the trial justice, in imposing sentence, to consider any mitigating factors whatsoever." (*State* v. *Cline* (1979) —R.I.— [397 A.2d 1309, 1311].)

■ The mitigating and aggravating factors which a trial judge must consider before deciding upon the death penalty are factors personal to the defendant and the crime. They include such things as the age of the defendant, his degree of direct involvement in the assault, the extent of premeditation or deliberation in the commission of the crime, the influence of drugs, alcohol or mental illness, whether any form of duress existed, whether the defendant reasonably believed his act was morally justified, whether there was some provocation not amounting to a defense. (See § 190.4.) ■ These are factors which should be considered even when the victim is a police officer, who, like a prison guard, holds a dangerous position and one the state has a special interest in protecting. (*Roberts* v. *Louisiana, supra,* 431 U.S. at pp. 636-637 [52 L.Ed.2d at pp. 641-642].)

The People's second major argument is that hinted at in *Gregg* v. *Georgia,* i.e., that only a mandatory death penalty is adequate to protect the prison guard from assault by a life prisoner. The theory is that the life prisoner with nothing more to lose will not be deterred by the threat of a lesser punishment. The life prisoner under the indeterminate sentencing law, however, was not as a practical matter in prison for life. Virtually all felons—life termers and nonlife termers alike—were returnable to society by virtue of discharge on parole. The People do not contend otherwise. They do point to authorities which suggest that the indeterminate sentence enhances a sense of helpless rage and frustration which may be taken out on the correctional officers. But it does not follow that life prisoners would be more likely than other prisoners to risk their chance of parole or that the certainty of death was in reality any more of a deterrent because the prisoner was frustrated and enraged. As the United States Supreme Court observed, the death penalty is most apt to deter the "carefully contemplated murders, such as murder for hire, where the possible penalty of death may well enter into the cold calculus that precedes the decision to act." (*Gregg* v. *Georgia, supra,* 428 U.S. at p. 186 [49 L.Ed.2d at pp. 881-882].) What the Supreme Court was concerned with was the possibility that no penalty other than death might be available for the life prisoner. Where there is a possibility of parole, the state has available the postponement of the parole date as well as harsher terms of confinement.

In 1978, section 4500 was amended to provide for an alternative punishment of life without possibility of parole if the victim of the assault dies.[3] This revision was made in response to the 1976 court decisions[4] and was made in spite of the specific reservation by the United States Supreme Court of any expression concerning the constitutionality of a mandatory death penalty for life prisoners who commit murder. It must be inferred that the Legislature considered the alternative punishment adequate.

It is concluded that the classification of persons subject to a mandatory death penalty in former section 4500 is not sufficiently narrow to encompass a consideration of mitigating factors required for a finding of constitutionality and that the People have not established that only death is an adequate penalty for malicious assault on a noninmate by a life prisoner. It follows, therefore, that section 4500 as it existed in 1973 was unconstitutional.

■ Petitioners not only argue that the 1973 version of section 4500 is unconstitutional; they also contend, citing *People* v. *Teron* (1979) 23 Cal.3d 103 [151 Cal.Rptr. 633, 588 P.2d 773], that the punishment provisions of the current version of section 4500 may not be applied retroactively. The defendant in *Teron* had been convicted of first degree

---

[3]Section 4500 presently reads: "Every person undergoing a life sentence in a state prison of this state who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment in the state prison without possibility of parole. The penalty shall be determined pursuant to the provisions of Sections 190.3 and 190.4; however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, the punishment shall be imprisonment in the state prison for life without the possibility of parole for nine years. [¶] For the purpose of computing the days elapsed between the commission of the assault and the death of the person assaulted, the whole of the day on which the assault was committed shall be counted as the first day. [¶] Nothing in this section shall be construed to prohibit the application of this section when the assault was committed outside the walls of any prison if the person committing the assault was undergoing a life sentence in a state prison at the time of the commission of the assault and was not on parole."

[4]In revising the mandatory capital punishment system, including section 4500, in 1977, the Legislature declared its intent as follows: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: [¶] The California Supreme Court has declared the existing death penalty law unconstitutional. This act remedies the constitutional infirmities found to be in existing law, and must take effect immediately in order to guarantee the public the protection inherent in an operative death penalty law." (Stats. 1977, ch. 316, § 26, p. 1266.)

murder and sentenced to die. The crime occurred in 1975 when the mandatory death penalty for first degree murder was in effect. By the time of his indictment, however, the 1977 legislation was in effect with its alternatives of death or life without possibility of parole. The Supreme Court held that the new death penalty statutes could not be applied to the defendant. The court pointed out that section 3 of the Penal Code has specifically provided that no provision of the code "is retroactive, unless expressly so declared." This provision does not bar the retroactive application of amendatory legislation which mitigates or reduces the punishment for a crime where it can be inferred that the court intended a retroactive application. Ordinarily, such an intention can be inferred from the fact of enactment. "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply...." (*In re Estrada* (1965) 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948].) This inference cannot be drawn in the case of death penalty legislation, because the Legislature has declared its belief "that the increased sanctions permitted by the new law were necessary for the immediate protection of the public. Consequently, the principle that statutes which increase the punishment for crime will be construed to apply only to crimes committed after their enactment governs the interpretation of the 1977 legislation, and precludes its retroactive application." (*People* v. *Teron, supra,* 23 Cal.3d at p. 117.) The court in *Teron* modified the judgment to provide for a sentence of life imprisonment. (*Id.,* at p. 119.)

It is concluded that the penalties presently provided by section 4500 may not be applied if petitioners are found guilty of a violation of that section.

Petitioner Graham alone seeks a writ in 1/Civil 47723, arguing that he should not be prosecuted for violation of Penal Code section 4500 on the ground that the section is not applicable to him in that he is not a life prisoner.

Graham contends that the enactment of the determinate sentence law (§ 1170 et seq.) in 1976 requires that the life sentence he was admittedly serving on November 27, 1973, now be considered as a term of years. From this premise he concludes the indictment against him

must be set aside because there is no evidence that he was a "person undergoing a life sentence" when the crime was committed. This contention cannot be sustained.

Every inmate sentenced to prison for an offense carrying a maximum term of life is "a life prisoner" within the meaning of section 4500 even though the Adult Authority may subsequently fix his term at less than life or grant parole. (*People* v. *Harmon* (1960) 54 Cal.2d 9, 16-17 [4 Cal.Rptr. 161, 351 P.2d 329], disapproved on another point in *In re Estrada, supra,* 63 Cal.2d 740; *People* v. *Jefferson* (1956) 47 Cal.2d 438, 442-443 [303 P.2d 1024]; *People* v. *Wells* (1949) 33 Cal.2d 330, 334-337 [202 P.2d 53], cert. den. 338 U.S. 836 [94 L.Ed. 510, 70 S.Ct. 43].) ■ A life prisoner may be convicted of violating section 4500 even if the conviction under which he was a life prisoner is invalid. "'If the purpose of the statute is to be achieved, and obviously the purpose is a sound one, it makes no difference why the prisoner has been confined, or that he may be legally entitled to release.'" (*Wells* v. *People of State of California* (9th Cir. 1965) 352 F.2d 439, 442, cert. den., 384 U.S. 1009 [16 L.Ed.2d 1021, 86 S.Ct. 1968]; see *People* v. *Superior Court (Gaulden)* (1977) 66 Cal.App.3d 773 [136 Cal.Rptr. 229].)

The legislative purpose in enacting section 4500 was to deter those who were serving life sentences who might otherwise believe they had nothing to lose. (See *People* v. *Wells, supra,* 33 Cal.2d 330, 335.) It is the prisoner's status on the day of the offense which brings him within this classification.

*People* v. *Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313], illustrates the flaw in petitioner's reasoning. There, the defendant had been found guilty of acts of oral copulation under Penal Code section 288a, which was amended subsequent to her conviction but before judgment was final. The acts performed by defendant were not included within the amended statute and, applying *In re Estrada, supra,* 63 Cal.2d 740, the court held that the defendant, Mrs. Rossi, could not be punished. However, had Mrs. Rossi been imprisoned upon her conviction and absented herself from the prison the day after section 288a was amended, she could still be prosecuted for escape. (*People* v. *Ganger* (1950) 97 Cal.App.2d 11, 13 [217 P.2d 41].) Similarly, had Mrs. Rossi been sentenced to a life term, she would have been subject to prosecution under section 4500 had she killed a prison guard.

The effect of *In re Estrada* has been considered in the context of the determinate sentencing law. It has been pointed out that cases such as *In re Estrada* involve ameliorative enactments in which the Legislature made no express statement as to its intent regarding prospectivity or retroactivity. The determinate sentencing law, however, sets forth a complete scheme as to its application to past offenses and sentences. (See *In re Brown* (1978) 78 Cal.App.3d 647, 651 [143 Cal.Rptr. 549]; *People* v. *Alcala* (1977) 74 Cal.App.3d 425, 427 [141 Cal.Rptr. 442].) Petitioner received the ameliorative effects intended to be applied to a person in his position when his term was computed in accordance with the act. These ameliorative effects did not include a change of designation retroactive to the time of the acts for which he is now to stand trial.

A writ will issue commanding respondent court to proceed on the basis that no death penalty can be imposed for the offenses petitioners are charged with. The alternative writ in 1/Civil 47723 is discharged and the petition is denied.

Rattigan, Acting P. J., and Poché, J., concurred.

Petitions for a rehearing were denied December 19, 1979, and the application of petitioner Graham and the petition of real party in interest in No. 47698 for a hearing by the Supreme Court were denied January 17, 1980.