[No. A023888. First Dist., Div. Four. Oct. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MITCHELL NEWMAN HARTY, Defendant and Appellant.

494

**COUNSEL**

Edie Sussman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.**—The primary issue before this court is whether the trial court erred in denying appellant's motion to strike a prior conviction alleging a *Boykin-Tahl* violation. Had his prior conviction been declared invalid, appellant argues he could not have been convicted of being *a felon* in possession of a firearm, nor could his sentence have been enhanced. We conclude that even assuming a *Boykin-Tahl* violation, appellant did not allege nor does the record show that he was prejudiced by his failure to explicitly waive his trial rights at the time of his earlier guilty plea. We therefore affirm the judgment.

An amended information charged appellant with three counts of burglary (Pen. Code, § 459),[1] five counts of receiving stolen property (§ 496), and

---

[1] All statutory references are to the Penal Code.

one count of being in possession of a concealable firearm after previously having been convicted of a felony (§ 12021). The information also alleged that he had been convicted in 1977 of armed robbery, a serious felony within the meaning of sections 667, subdivision (a) and 1192.7, subdivision (c).

Pursuant to a negotiated disposition, appellant was found guilty of two counts of burglary, one count of receiving stolen property, and one count of being an ex-felon in possession of a firearm, the latter conditioned on the court's finding the alleged prior conviction to be true. The remaining charges were dismissed.

Appellant moved to strike the 1977 prior on *Boykin-Tahl* grounds. It was understood that if the prior was declared invalid, both his conditional plea to the section 12021 weapons charge and the enhancement allegation would be stricken. Appellant waived a jury trial on the validity of the prior conviction, and agreed to submit the issue to the court based on the transcript of the preliminary hearing in the earlier proceeding. The motion to strike the 1977 prior was denied, appellant was convicted of the violation of section 12021, and the enhancement allegation was found to be true.

Appellant was sentenced to concurrent two-year terms on each of the four counts, and his sentence was enhanced by five years as a result of the prior conviction pursuant to section 667, subdivision (a). Execution of the sentence was suspended and appellant was placed on probation for a period of five years, with a condition that he serve one year in county jail.

Timely notice of appeal was filed.

## DISCUSSION

Appellant contends the trial court erred in denying his motion to strike the prior conviction of armed robbery, because the record of the earlier proceeding contained no express waiver of his constitutional rights and failed to articulate for appellant the nature of the charge and the consequences of his guilty plea.

Respondent argues at the outset that we need not reach the issue of the validity of the prior conviction, because the armed robbery conviction was extant and valid at the time appellant committed the new crime by possessing a firearm. In addition, respondent asserts that the sentence enhancement issue is premature and moot, because the sentence was suspended and appellant was placed on probation.

## 1. *Effect on Section 12021 Conviction*

■ The first argument by respondent is well taken. Although we are not aware of any California case precisely on point, we conclude that the possible invalidity of an underlying prior felony conviction provides no defense to possession of a concealable weapon by a felon in violation of section 12021. ■ In analogous circumstances, California courts have repeatedly held that defendants charged with crimes based on their prisoner status may be convicted of such offenses notwithstanding the invalidity of the conviction upon which the prisoner status was based. (See, e.g., *Graham* v. *Superior Court* (1979) 98 Cal.App.3d 880, 890 [160 Cal.Rptr. 10]; *People* v. *Superior Court (Gaulden)* (1977) 66 Cal.App.3d 773, 777-779 [136 Cal.Rptr. 229], disapproved on other grounds in *People* v. *Sumstine* (1984) 36 Cal.3d 909, 919, fn. 6 [206 Cal.Rptr. 707, 687 P.2d 904] [prosecution for assault by life prisoner—§ 4500; conviction possible despite invalidity of conviction upon which life sentence was based]; *People* v. *Scherbing* (1949) 93 Cal.App.2d 736, 742-744 [209 P.2d 796], disapproved on other grounds in *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375] [possession of weapon by prisoner—§ 4502; invalidity of statute under which prisoner was confined is no defense].)

■ Closer in point is *Lewis* v. *United States* (1980) 445 U.S. 55 [63 L.Ed.2d 198, 100 S.Ct. 915], in which the United States Supreme Court, construing a federal statute (18 U.S.C. § 1202(a)(1)) similar to section 12021, held that the statute prohibited a felon from possessing a firearm despite the fact the underlying felony may have been subject to collateral attack on constitutional grounds. (*Id.*, at p. 65 [63 L.Ed.2d at p. 209].) In so holding, the court distinguished its earlier decisions which had held that a constitutionally invalid conviction could not be used for enhancement of punishment under a state's recidivist statute (see *Burgett* v. *Texas* (1967) 389 U.S. 109 [19 L.Ed.2d 319, 88 S.Ct. 258]), in sentencing a defendant after a subsequent conviction (see *United States* v. *Tucker* (1972) 404 U.S. 443 [30 L.Ed.2d 592, 92 S.Ct. 589]), nor in impeaching the general credibility of the defendant (see *Loper* v. *Beto* (1972) 405 U.S. 473 [31 L.Ed.2d 374, 92 S.Ct. 1014]). (*Lewis* v. *United States, supra*, 445 U.S. at pp. 60, 66-67 [63 L.Ed.2d at pp. 205, 210].) The court stated: "Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with *Burgett, Tucker* and *Loper.* In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose con-

viction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational." (*Id.,* at p. 67, fn. omitted [63 L.Ed.2d at p. 210]; see also *People* v. *Dubose* (1974) 42 Cal.App.3d 847, 849 [117 Cal.Rptr. 235] [§ 12021 constitutional].)

We conclude that if a previously convicted felon desires to obtain a firearm, he should first challenge the validity of the prior conviction by a motion to vacate the conviction in the court that entered the judgment. (See *Lewis* v. *United States, supra,* 445 U.S. at pp. 60, 67 [63 L.Ed.2d at pp. 205-206, 210]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839].) ██ ██▀█ ██ But he may not resort to self help by first obtaining and possessing the firearm, and thereafter try to assert the invalidity of the prior conviction as a defense to a prosecution under section 12021.[2]

## 2. *Effect on Sentence Enhancement*

██ Although the validity of appellant's 1977 prior robbery conviction is irrelevant to his section 12021 violation, he was entitled to contest its validity insofar as it was relied upon to enhance his punishment pursuant to section 667, subdivision (a). (*Lewis* v. *United States, supra,* 445 U.S. at p. 60 [63 L.Ed.2d at p. 205]; *Burgett* v. *Texas, supra,* 389 U.S. at p. 115 [19 L.Ed.2d at pp. 324-325].) Respondent asserts that appellant's complaint in this regard is premature or moot because execution of his sentence was suspended and he was placed on probation. He suggests appellant may never be ordered imprisoned for the enhanced term and that he should await any future probation revocation proceeding before pursuing this issue. This assertion lacks merit.

██ First, the issue is not premature. Sentence has been imposed against appellant, but execution of that sentence has been suspended. The judgment entered against him was a final judgment of conviction from which an appeal properly has been taken by him. (§ 1237, subd. 1; *People* v. *Howerton* (1953) 40 Cal.2d 217, 219 [253 P.2d 8]; *People* v. *Munoz* (1975) 51

---

[2]We note that in *Lewis,* the Supreme Court stated that the prior felony conviction imposes a firearm disability "until the conviction is vacated *or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury.*" (*Id.,* at pp. 60-61 [63 L.Ed.2d at p. 206], italics added.) It appears that under California law, however, neither a pardon (§ 4852.17) nor a certificate of rehabilitation following successful completion of probation (§ 1203.4) will suffice to restore an ex-felon's right to possess a firearm under section 12021. (Cf. *Dickerson* v. *New Banner Institute, Inc.* (1983) 460 U.S. 103 [74 L.Ed.2d 845, 103 S.Ct. 986] [federal firearm disabilities continue to apply to state felon whose record is expunged under state procedure following term of probation].)

Cal.App.3d 559, 563 [124 Cal.Rptr. 322]; see also *People* v. *Glaser* (1965) 238 Cal.App.2d 819, 821 [48 Cal.Rptr. 427].) An appeal would also lie from an order after judgment which revokes probation and places the sentence into effect (§ 1237, subd. 2; *People* v. *Coleman* (1975) 13 Cal.3d 867, 871, fn. 1 [120 Cal.Rptr. 384, 533 P.2d 1024]), but matters arising prior to judgment cannot then be reviewed. (*People* v. *Glaser, supra,* 238 Cal.App.2d 819; *People* v. *Munoz, supra,* 51 Cal.App.3d 559].) Thus, unless appellant asserts the issue now, he will waive it for purposes of appellate review.

■ Further, the issue is not moot. The threat of a prolonged imprisonment continues to hang over the head of appellant. To appellant, the enhanced sentence, even though its execution has been suspended, is not an abstract or academic issue of law. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 462, p. 4418.)

This appeal is therefore the most appropriate vehicle for having the trial court's determination reviewed. We now turn to the merits of appellant's contention, insofar as it relates to the validity of his prior 1977 robbery conviction as a basis for enhancing his sentence under section 667.5.

In *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the United States Supreme Court held that a court may not accept a guilty plea until it determines that the defendant is aware of the constitutional rights waived by pleading guilty—namely, the privilege against compulsory self-incrimination, the right to a trial by jury and the right to confront his accusers—and that the defendant has knowingly and voluntarily waived those rights. In *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], the California Supreme Court further stated: "[T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of the plea. Each must be enumerated and responses elicited from the person of the defendant." (*Id.,* at p. 132, italics in original.)

■ Respondent asserts that there was direct evidence on the face of the record which demonstrates that appellant was advised of and waived his constitutional rights. Respondent argues that prior to entering his guilty plea, appellant was apprised of his constitutional rights and told that by· pleading guilty, he waived those rights.[3]

---

[3]Appellant's 1977 conviction resulted from a certified plea of guilty entered before a magistrate in the municipal court pursuant to section 859a, subdivision (a). The following

■ In every guilty plea situation, there is necessarily an implicit waiver of the defendant's constitutional rights to a jury trial, to confrontation and against self-incrimination. (See *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 307, fn. 16 [110 Cal.Rptr. 329, 515 P.2d 273].) Nevertheless, it has been stated that the waiver of *Boykin-Tahl* rights must be *explicit* and *express*. Inferences, no matter how plausibly drawn are insufficient to establish such waiver. (*Stewart* v. *Justice Court* (1977) 74 Cal.App.3d 607, 611 [141 Cal.Rptr. 589], citing *Mills* v. *Municipal Court, supra,* 10 Cal.3d at p. 307; *In re Tahl, supra,* 1 Cal.3d at pp. 132-133.) ■ In this case, the record does not show on its face that appellant expressly and explicitly waived his constitutional rights of jury trial, confrontation and against self-incrimination.

■ Notwithstanding the strict requirements of the above cited cases, judgments have been affirmed where the record clearly shows (1) the defendant was fully *advised* of the three constitutional rights waived by pleading guilty, (2) the defendant has expressed his *understanding* of those rights being waived, but (3) something less than the magic words "I waive" or "I give up" were used to effectuate the waiver of those rights. (See *People* v. *Martin* (1980) 111 Cal.App.3d 973, 978-982 [169 Cal.Rptr. 52]; *People* v. *Gloria* (1980) 108 Cal.App.3d 50, 53 [166 Cal.Rptr. 138].) What is of primary importance is the defendant's awareness of his constitutional rights. (*People* v. *Gloria, supra.*) "The defendant does not have to say precisely by rote, 'I give up my right to a trial by jury.' 'Something short of this procedure *may* in a proper context, be held sufficient; . . .' *In re Tahl, supra,* at p. 133.)" (*People* v. *Martin, supra,* 111 Cal.App.3d at p. 981, italics in original.)

■ Ultimately, however, we need not decide if the *Boykin-Tahl* requirements were sufficiently complied with in this case. ■ While it is now clear that a motion to strike is a proper and timely vehicle to attack an invalid prior conviction (*People* v. *Sumstine, supra,* 36 Cal.3d at pp. 918-919), a successful collateral attack on a prior conviction requires an allegation and a showing of actual prejudice from any *Boykin-Tahl* error. (*In*

exchange is revealed by the record of that proceeding:

"THE COURT: So you understand that you have a right to trial by jury in the Superior Court?

"You understand that at that time you have a right to confront the witnesses called against you?

"You have a right not to incriminate yourself in any way, and that if you in fact enter this plea today with the limitations on the sentence, that you are in fact incriminating yourself and giving up this right to a Preliminary today and a right to a trial by jury in a Superior Court?

"Do you understand that?

"DEFENDANT: Yes, Your Honor."

*re Ibarra* (1983) 34 Cal.3d 277, 283, fn. 1 [193 Cal.Rptr. 538, 666 P.2d 980]; *In re Ronald E.* (1977) 19 Cal.3d 315, 325, fn. 8 [137 Cal.Rptr. 781, 562 P.2d 684].)

 In this case, appellant submitted a declaration in support of his motion to strike which averred in pertinent part that he did not knowingly and voluntarily waive his rights to a jury trial, to contact[4] witnesses, and to remain silent in the proceeding leading to the armed robbery conviction. As a result, appellant was entitled to an evidentiary hearing of the type described in *People* v. *Sumstine, supra,* 36 Cal.3d 909 and *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15].

Although the trial court did hold a hearing, under then existing case law it limited its consideration to whether or not appellant had been deprived of his right to counsel at the time of his 1977 guilty plea. But as a result of the hearing which was held, we have available on appeal the entire record of the 1977 proceeding, and appellant has had the opportunity both in his opening brief and in a post-*Sumstine* letter brief to assert and show prejudice from the alleged denial of his *Boykin-Tahl* rights. On the record which is before us, we know that (1) appellant was fully *advised* of his *Boykin-Tahl* rights and (2) he *expressed his understanding* of those rights being waived. (See fn. 3, *ante.*) In this context, we fail to perceive the prejudice necessary on collateral review of that conviction resulting from the absence of an explicit and express waiver of those rights.

"Petitioner is not entitled to collateral relief merely because of a *Boykin-Tahl* denial as in such event the writ [or motion to strike] would merely serve as an alternate path for appellate review. He must, in these circumstances, establish that his admissions were involuntary for want of the admonitions required by *Boykin-Tahl*. But notwithstanding the absence of such admonitions, if he were in fact independently aware of *Boykin-Tahl* rights, then his admissions could not be deemed involuntary and he would not be entitled to collateral relief. [Citation.]" (*In re Ronald E., supra,* 19 Cal.3d at p. 325, fn. 8.)

In the context of this adult criminal proceeding, *Ronald E.* requires appellant to establish that his guilty plea was in fact involuntary for want of the *Boykin-Tahl* admonitions. Thus, assuming *Boykin-Tahl* error, reversal is not required where it is not reasonably probable that, if advice were given and more explicit waivers were sought, appellant would not have pleaded guilty at the 1977 proceedings. (See *People* v. *Prado* (1982) 130

---

[4]We construe appellant's allegation that he did not waive his right to "contact" witnesses as an allegation that he did not waive his right of confrontation.

Cal.App.3d 669, 675 [182 Cal.Rptr. 129].) Appellant has neither alleged nor made that showing.

■ Appellant's claim that he was not informed of the nature of the charge and the consequences of his plea in accordance with the requisites of *Boykin-Tahl* merits separate comment. These particular advisements are not constitutionally compelled, but constitute a "judicially declared rule of criminal procedure." (*In re Ronald E., supra,* 19 Cal.3d at p. 321; *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561].)

■ Appellant contends that he was not adequately informed of the nature of the charge, because his advisement was given by the prosecutor rather than by the trial judge. However, the requirement that an accused be advised of the nature of the charges against him is satisfied if the record demonstrates that the accused had fair notice of what he was being asked to admit. (*In re Ronald E., supra,* 19 Cal.3d at p. 324.) Since appellant admits there would be no error had the court merely reiterated the charges described by the prosecutor, we find appellant was properly apprised. We will not condemn the oft-used practice of permitting either the prosecutor or the defense attorney to explain to the accused, on the record, the nature of the charge.

■ Appellant further argues that he was not properly advised of the consequences of his plea. The defendant must be advised of the direct consequences of a conviction, such as the permissible range of punishment provided by statute. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) The requirement relates to the primary and direct consequences involved in the criminal case itself (*In re Birch* (1973) 10 Cal.3d 314, 319-320 [110 Cal.Rptr. 212, 515 P.2d 12]), and not to secondary, indirect or collateral consequences. (*People* v. *Searcie* (1974) 37 Cal.App.3d 204, 211 [112 Cal.Rptr. 267] [possibility of probation revocation and subsequent prison sentence]; see also *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 527, fn. 1 [145 Cal.Rptr. 636] [possibility of increased punishment upon a subsequent conviction].)

In this case, appellant correctly points out that he was not advised of the maximum term of imprisonment provided by statute. However, the magistrate did state: "We are talking about state prison. I mean that would be suspended, . . . and you would do a period of time in the county jail, anywhere up to a year. . . . And you would be put on probation." We therefore find that appellant was adequately advised of the direct consequences of his 1977 plea—he was informed of the one-year maximum term he could be sentenced to pursuant to the plea negotiation agreed upon by him, the prosecution, and the court.

The judgment is affirmed.

Anderson, P. J., and Sabraw, J., concurred.