Filed 12/30/25  P. v. Calderon CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID GUADALUPE CALDERON,<br><br>    Defendant and Appellant. | 2d Crim. No. B336987<br>(Super. Ct. No. 2015024873)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered the opinion filed herein on December 3, 2025, be modified as follows:

1.  On page 1, the second sentence beginning "Calderon requested a bifurcated trial" is deleted and the following is inserted in its place:

> Calderon waived jury on allegations of a gang-murder special circumstance (§ 190.2, subd. (a)(22)) and enhancements that he committed the offense to

benefit a criminal street gang (§ 186.22, subd. (b)(1)) and while on bail (§ 12022.1, subd. (b)).

2.  On page 2, first full paragraph, second sentence beginning "He contends" is deleted and the following is inserted in its place:

He contends his jury trial waivers on the bifurcated special circumstance and on-bail enhancement were invalid.[2]

After this new sentence, footnote 2 is added as follows, which will require renumbering of all subsequent footnotes:

[2] Calderon does not challenge his jury waiver for the criminal street gang enhancement (§ 186.22, subd. (b)(1)).

3.  On page 3, third full paragraph, first sentence beginning "At a pretrial hearing" is deleted and the following is inserted in its place:

At a pretrial hearing in February 2024, Calderon requested a bifurcated trial on the gang-murder special circumstance (§ 190.2, subd. (a)(22)) and the criminal street gang enhancement (§ 186.22, subd. (b)(1)).

4.  On page 3, fourth full paragraph, the first and second sentences beginning "The written waiver form" are deleted and the following is inserted in their place:

The written waiver form stated: "My attorney has explained to me, and I understand, that I am waiving (giving up) each of the following constitutional rights regarding the special circumstance, alleged pursuant to Penal Code section 190.2(a)(22), and the special allegation, alleged pursuant to Penal Code section 186.22(b)(1), in the indictment[;] [¶] 1. The right to have every allegation against me determined by a jury of 12 persons; [¶] 2. The right to confront and, through my attorney, cross-examine each witness called by the prosecution at jury trial to prove my guilt; [¶] 3. The right against self-incrimination, which means I would not have to testify at the jury trial, and if I did not, the judge or jury could not consider this as evidence against me." It further stated, "I am entering this waiver freely and voluntarily and not as the result of any force, pressure, threats, or coercion brought against me or any member of my family."

5. On page 4, first full paragraph, the third sentence beginning "Calderon also confirmed" is deleted and the following is inserted in its place:

Calderon also confirmed he reviewed the waiver with his attorney, and understood that for the special circumstance and criminal street gang enhancement he was waiving his "right to have every allegation against [him] determined by [a] jury of 12 people," his

3

right to confront and cross-examine "each witness called by the People at a jury trial," and his "right against self-incrimination, which means [he] would not have to testify at the jury trial regarding these priors or these special allegations." Calderon agreed to give up his right to a jury trial for those allegations.

6. On page 6, the first sentence of the DISCUSSION, beginning "Calderon contends" is deleted and the following is inserted in its place:

Calderon contends his jury trial waivers on the bifurcated special circumstance and on-bail enhancements were invalid.

7. On page 11, in the penultimate paragraph of the DISCUSSION, after "In our view, Calderon's jury trial waiver cannot be attributed to ignorance.[3]," the following sentence is added:

And for these reasons, we reject Calderon's contention that reversal is required because his written jury waiver included his right to confrontation and right against self-incrimination.

There is no change in the judgment. Appellant's petition for rehearing is denied.

YEGAN, Acting P. J.          BALTODANO, J.          CODY, J.

4

Filed 12/3/25  P. v. Calderon CA2/6 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID GUADALUPE CALDERON,<br><br>Defendant and Appellant. | 2d Crim. No. B336987<br>(Super. Ct. No. 2015024873)<br>(Ventura County) |

David Guadalupe Calderon appeals from the judgment after a jury convicted him of premeditated first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a); count 1) and found true that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  Calderon requested a bifurcated trial and waived jury on enhancements alleging a gang-murder special circumstance (§ 190.2, subd. (a)(22)), and

---

[1] Undesignated statutory references are to the Penal Code.

that he committed the offense to benefit a criminal street gang (§ 186.22, subd. (b)(1)) and while on-bail (§ 12022.1, subd. (b)). The trial court found the special circumstance and enhancements true. The court sentenced Calderon to life without the possibility of parole.

Calderon does not contest the sufficiency of the evidence supporting his conviction and true findings. He contends his jury trial waiver on the bifurcated enhancements was invalid. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In February 2012, Calderon and another man drove into rival gang territory. Calderon said he would shoot rival gang members. They saw Edwin Herrera sitting in a parked car with the driver's door open. Calderon exited the car with a firearm hidden behind his leg. He approached Herrera and asked him, " 'Where are you from?' " Herrera responded, " 'I'm not from nowhere.' "

Calderon then pointed his firearm at Herrera and asked again, " 'Where are you from?' " Herrera repeatedly said, " 'I'm not from nowhere.' " Calderon then aimed the firearm at Herrera, and Herrera again said, " 'I'm not from nowhere' " and put up his hands. Calderon "pull[ed] the trigger" from two to three feet away and Herrera's body slumped in the car. Herrera was not a gang member.

In June 2016, Calderon was charged in an amended indictment with premeditated first degree murder. It was also alleged that Calderon committed the offense while he was an active participant in a criminal street gang to further the activities of and benefit the gang, and while he was released on bail. (§§ 190.2, subd. (a)(22), 186.22, subd. (b)(1), 12022.1, subd.

(b).)

In May 2021, Calderon elected to represent himself. The trial court approved Calderon's written waiver of his right to counsel. Calderon represented himself for approximately fifteen months. He engaged with the prosecutor and the trial court in setting court dates, waiving his speedy trial rights, and rescheduling his trial date. Calderon filed a written motion for discovery that cited various legal authorities, and he argued the motion at a hearing. Calderon also filed a motion to suppress evidence. (§ 1538.5.) He again cited legal authority, cross-examined the People's witness, and conducted direct examination of three witnesses.

In October 2022, the court approved Calderon's request to relieve his pro per status and appointed counsel.

At a pretrial hearing in February 2024, Calderon requested a bifurcated trial on the gang-murder special circumstance (§ 190.2, subd. (a)(22)) and the criminal street gang (§ 186.22, subd. (b)(1)) and on-bail enhancements (§ 12022.1, subd. (b)). Calderon and his counsel took a break to discuss a waiver of constitutional rights form.

The written waiver form stated: "My attorney has explained to me, and I understand, that I am waiving (giving up) each of the following constitutional rights regarding the special circumstance, alleged pursuant to Penal Code section 190.2(a)(22), and the special allegation, alleged pursuant to Penal Code section 186.22(b)(1), in the indictment[;] . . . The right to have every allegation against me determined by a jury of 12 persons; [¶] . . . [¶] I am entering this waiver freely and voluntarily and not as the result of any force, pressure, threats, or coercion brought against me or any member of my family.

Further, no commitments have been made to me or my attorney other than those that appear on this form . . . [¶] [and] I have discussed with my attorney and understand the consequences of this waiver and my constitutional rights. I waive (give up) the above-mentioned constitutional rights. I request that the court accept my waiver."

The prosecutor questioned Calderon about the waiver. Calderon confirmed the signature and initials on the form were his. Calderon also confirmed he reviewed the waiver with his attorney, understood he was waiving his "right to have every allegation against [him] determined by [a] jury of 12 people," and agreed to give up his right to a jury trial.

Calderon's counsel joined in the waiver of rights. In the written waiver, counsel confirmed that he "explained to the defendant all of his constitutional rights." He also stated, "I am satisfied [Calderon] understands his constitutional rights. . . . I have explained the direct and indirect consequences of this waiver to the defendant and am satisfied he understands them. I am satisfied the defendant is voluntarily and of his own free will seeking to enter this waiver."

The trial court did not independently question Calderon. But it found he "expressly, knowingly, understandingly and intelligently waived his statutory and constitutional rights to the jury trial" on the gang-murder special circumstance and criminal street gang enhancements. It also entered an order granting the jury waiver based on findings that Calderon "understands" the consequences, "knowingly, intelligently, and understandingly waived his rights," and the waiver was "voluntary."

The next day the parties indicated that Calderon was prepared to also waive his right to a jury trial on the on-bail

4

enhancement. The court said, "You still have a right to a jury trial which means you have the right to have 12 citizens from the community listen to the evidence with respect to that out-on-bail allegation and determine whether or not it's been proven beyond a reasonable doubt." "And if you give up your right to a jury trial, it would be the Court, me, deciding whether or not the People have proven that allegation beyond a reasonable doubt." Calderon said he understood, waived his right to a jury trial, and his counsel joined in the waiver. The court found the waiver was "freely and voluntarily made."

Jury trial proceedings began the next morning. Calderon was present for jury selection proceedings and the prosecution's case in chief.

Calderon elected not to testify, and the defense did not call any witnesses after the close of the prosecution's case in chief.

The jury convicted Calderon of premeditated first degree murder (§§ 187, subd. (a), 189, subd. (a); count 1) and found true that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). At no point before the bifurcated trial on the enhancements did Calderon express a desire to deviate from his jury trial waivers. In the bifurcated trial, the court found true the gang-murder special circumstance (§ 190.2, subd. (a)(22)), and criminal street gang (§ 186.22, subd. (b)(1)) and on-bail enhancements (§ 12022.1, subd. (b)).

The trial court sentenced Calderon to life without the possibility of parole for the special circumstance murder plus 25 years to life for the firearm enhancement, and two years consecutive for the on-bail enhancement.

## DISCUSSION

### *Jury waiver*

Calderon contends his jury trial waivers on the bifurcated special circumstance, criminal street gang, and on-bail enhancements were invalid. We are not persuaded.

The federal and state constitutions guarantee the right to trial by jury. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) "The denial of a defendant's constitutional right to a jury trial constitutes structural error that requires reversal regardless of the strength of the evidence supporting the conviction. [Citations.]" (*People v. Jones* (2018) 26 Cal.App.5th 420, 429.)

A waiver of jury trial must be " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " ' " and " 'voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' [Citation.]" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) But trial judges need not follow a rigid formula or use any particular words to ensure that a jury waiver is knowing and intelligent. (*Id.* at pp. 169–170.) The advisements may be given by the prosecutor rather than the judge. (*People v. Harty* (1985) 173 Cal.App.3d 493, 504 [guilty plea].)

"The voluntariness of a waiver is a question of law which appellate courts review de novo." (*People v. Panizzon* (1996) 13 Cal.4th 68, 80 [waiver of appeal]; *People v. Morelos* (2022) 13 Cal.5th 722, 735 [*Faretta*[2] waiver].) A jury waiver is valid only " ' "if the record *affirmatively* shows that it is voluntary and

---

[2] *Faretta v. California* (1975) 422 U.S. 806.

intelligent under the totality of the circumstances." ' " (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.) (*Daniels*).) " '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' " (*Sivongxxay, supra*, 3 Cal.5th at p. 166.)

In *Sivongxxay*, our Supreme Court provided guidance to trial courts taking jury waivers in criminal cases. "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) But *Sivongxxay* nonetheless confirmed that California Supreme Court "precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial." (*Id*. at p. 167.) Later in *Daniels*, our high court reaffirmed that the validity of a jury waiver does not depend on "trial courts provid[ing] any particular advisements." (*Daniels, supra*, 3 Cal.5th at p. 993.)

Calderon was advised of two of the *Sivongxxay* recommendations, and a third was not relevant. He waived the right to "a jury of 12 persons." Regarding the bail allegation, he was advised he "*still* [had] the right to a jury trial which means . . . the right to have *12 citizens from the community* listen to the evidence." (Italics added.) Also, regarding the bail allegation, he

7

was advised the judge alone would decide whether the allegation had been proven beyond a reasonable doubt.  The waiver regarding the bail allegation preceded the trial on the enhancements, while Calderon still had the opportunity to withdraw his jury waiver if he wished.

An advisement about participation in jury selection was not required because the bifurcated portion of the trial is generally heard by the same jury that decided guilt.  Calderon's attorney had participated in jury selection by questioning potential jurors and exercising peremptory challenges.

Calderon was present at the conclusion of the guilt phase when the jury was instructed that its verdict must be unanimous. (CALCRIM No. 3550.)  Although jury unanimity was not mentioned regarding the jury waiver, our Supreme Court has "never insisted that a jury waiver colloquy invariably must discuss . . . the unanimity requirement." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 168.)

Despite our Supreme Court's guidance in *Sivongxxay*, neither Calderon's written waiver, the prosecutor's questions, nor the trial court's colloquy contain all its recommended advisements.  But "[v]iewed holistically, [we conclude] the circumstances surrounding [Calderon's] jury waiver demonstrate that it was knowing and intelligent." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 168.)  Those circumstances include Calderon's written jury waiver and defense counsel's representations; Calderon's conduct after executing his waiver; and Calderon's experience with the criminal justice system.

The written jury waiver and defense counsel's attestations support that Calderon's jury waiver was knowing, intelligent, and voluntary.  A written waiver can help establish the adequacy

8

of a jury waiver.  (See *People v. Weaver* (2012) 53 Cal.4th 1056, 1070 (*Weaver*).)  Calderon and his counsel took a break to discuss the jury waiver.  In that waiver, Calderon confirmed that he and his attorney discussed the consequences of waiving his right to jury trial on the bifurcated enhancements.  Calderon also confirmed that his waiver was entered freely and voluntarily.  And counsel confirmed that he explained the indirect and direct consequences of the jury trial waiver to Calderon.  Counsel was satisfied that Calderon understood the waiver of his constitutional rights, including the indirect and direct consequences, and that his waiver was voluntary.

"Counsel plays a crucial part in transmitting information to the client."  (*Daniels*, *supra*, 3 Cal.5th at p. 996.)  Here, counsel's written waiver's attestations satisfy *Sivongxxay*'s additional recommendations that trial courts inquire whether a defendant and counsel had an adequate opportunity to discuss the waiver to ensure understanding of the right being waived.  (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 169–170; see also *Weaver*, *supra*, 53 Cal.4th at p. 1070 [counsel's attestations established jury waiver was knowing and intelligent].)  The written waiver also provides a factual basis to establish voluntariness because it confirms no threats or promises were made to Calderon in exchange for waiving jury.  (See *People v. Morelos*, *supra*, 13 Cal.5th at p. 754; *Daniels*, *supra*, 3 Cal.5th at p. 988 (lead opn. of Cuéllar, J.).)

Because our de novo review is based on a "nuanced account" of the "totality of the circumstances" (*Daniels*, *supra*, 3 Cal.5th at pp. 991, 1018), we also consider events "before and after [Calderon's] waiver was entered" to confirm its "character and scope."  (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 167, fn. 2, 173, fn. 8.)  After executing his jury waiver and the trial court

9

expressly finding that it was knowing, intelligent, and voluntary, trial proceedings began. Calderon was present for jury selection and the guilt phase of trial. At no point during these proceedings did Calderon indicate he wanted a jury trial on the enhancements. Not before the People rested. Not when Calderon chose not to testify. Not after the jury rendered its verdict at the conclusion of the guilt phase. And not before the bifurcated trial on the enhancements began.

Like the defendant in *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*) who was aware of his trial rights when he admitted a prior conviction because he "had *just* undergone a jury trial" on the substantive offense (*Mosby*, at p. 364), Calderon did not request the trial court deviate from his previously executed waivers after having just undergone a jury trial in the guilt phase. Calderon's conduct supports our conclusion that his jury waiver on the bifurcated enhancements was knowing, intelligent, and voluntary.

Nor was Calderon a person who lacked legal sophistication. A " 'defendant's prior experience with the criminal justice system' is . . . 'relevant to the question [of] whether he knowingly waived constitutional rights.' " (*Mosby*, *supra*, 33 Cal.4th at p. 365.) During the pendency of this case Calderon represented himself for fifteen months, executed a written waiver of counsel form, waived his speedy trial rights, filed two motions citing legal authorities, argued the motions before the court, and conducted direct and cross-examinations of witnesses at a motion to suppress hearing. "[W]hen criminal history is brought to bear on an inquiry into a waiver of the right to a jury trial in favor of a bench trial, the most relevant experience is previously having undergone a criminal trial." (*Daniels*, *supra*, 3 Cal.5th at p. 1001,

italics omitted.)  In our view, Calderon's jury trial waiver cannot be attributed to ignorance.[3]

We recognize that our Supreme Court has recommended trial courts engage in a "robust oral colloquy" when criminal defendants seek to waive jury.  But based on the totality of "all relevant circumstances" here, such a colloquy was not necessary. (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 168–170.)  "The test of a valid waiver ultimately turns, not on whether specific warnings or advisements were given, but whether " 'the record affirmatively shows that [the waiver] is voluntary and intelligent under the totality of the circumstances.' " (*Daniels*, *supra*, 3 Cal.5th at p. 1018.)  The record here "affirmatively" shows that Calderon's waiver was voluntary and intelligent.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

---

[3] Calderon requests that we take judicial notice of the felony disposition statement in another case in which he was the defendant, *People v. Calderon* (Super. Ct. Ventura County, 2024, No. 2023030241).  We deny the request because it has "little relevance to a material issue in this matter." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1.)

11

Catherine Voelker, Judge

Superior Court County of Ventura

_____

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.