[No. A080393. First Dist., Div. Four. Dec. 31, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS MICHAEL MOORE, Defendant and Appellant.

COUNSEL

George O. Benton, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christina V. Kuo and Donna A. McIntosh, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HANLON, P. J.**—Defendant Thomas Michael Moore was convicted on a plea of no contest of committing a lewd act on a child under the age of 14. (Pen. Code, § 288, subd. (a).) On appeal from the judgment with a certificate of probable cause, Moore contends that the court erred in denying his motion to withdraw the plea. The issue is whether the court was required to advise Moore, before accepting his plea, that he might eventually be subject to additional confinement under the Sexually Violent Predator Act. (Welf. & Inst. Code, § 6600 et seq.; hereafter the SVP Act). We conclude that this advice was not required and affirm the judgment of conviction.

BACKGROUND

According to evidence presented at the preliminary hearing, Moore spent a few nights at the home of the victim, Jessica F., and her mother in

November 1996. Jessica testified that on the Wednesday before Thanksgiving Moore woke her by placing his hands on her stomach underneath her nightgown, and asked if she would like to watch television with him. They then lay side by side on the couch under a blanket and Moore touched her vaginal area. Jessica said that she heard Moore unzip his pants and that he touched his penis to her vagina. She said it hurt when Moore touched her "private" with his "private." Jessica's mother testified that Jessica had told her, on the Wednesday before Thanksgiving, that Moore had put his "private" on her "private" and that it had "hurt a little."

By information filed in February 1997, Moore was charged among other things with violating Penal Code section 288, subdivision (a). It was alleged that Moore was ineligible for probation because he was a stranger to the victim within the meaning of Penal Code section 1203.066, subdivision (a)(3). It was further alleged that he had been convicted in October 1985 of violating Penal Code section 288, subdivision (a), and Penal Code section 288a (oral copulation with a minor).

In March 1997, Moore pled no contest to a violation of Penal Code section 288, subdivision (a), admitted the Penal Code section 1203.066, subdivision (a)(3) allegation, and admitted a prior strike conviction. In May 1997, the trial court allowed Moore to withdraw his no contest plea and reinstate his original not guilty plea. In June 1997, Moore renewed his no contest plea to a Penal Code section 288, subdivision (a) violation, and again admitted the Penal Code section 1203.066, subdivision (a)(3) allegation and the prior strike conviction.

Moore's counsel then withdrew from the case citing a conflict of interest, new counsel was appointed, and Moore moved to withdraw his no contest plea for the second time. The motion was based on various grounds, including the court's failure to advise Moore that he might eventually be subject to proceedings under the SVP Act. The motion was denied, and Moore was sentenced to 12 years in state prison pursuant to a negotiated disposition.

### DISCUSSION

Moore contends that his motion to withdraw his second no contest plea should have been granted because the court failed to advise him, before the plea was entered, that the plea could lead to SVP Act proceedings which might require him to "spend the rest of his life in prison." Although "the withdrawal of such a plea rests in the sound discretion of the trial court" (*People* v. *Francis* (1954) 42 Cal.2d 335, 338 [267 P.2d 8]), we will presume

that the motion to withdraw the plea was erroneously denied if the advisement at issue was required.

■ "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction." (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) "This judicially mandated rule of criminal procedure encompasses only primary and direct consequences of a defendant's impending conviction as contrasted with secondary, indirect or collateral consequences." (*People* v. *Robinson* (1988) 205 Cal.App.3d 280, 282 [252 Cal.Rptr. 202].) The advice requirement generally extends only to "penal" consequences (*People* v. *Kunkel* (1985) 176 Cal.App.3d 46, 53 [221 Cal.Rptr. 359]; *People* v. *Myers* (1984) 157 Cal.App.3d 1162, 1168 [204 Cal.Rptr. 91]), which are "involved in the criminal case itself" (*People* v. *Harty* (1985) 173 Cal.App.3d 493, 504 [219 Cal.Rptr. 85]).

A consequence is deemed to be "direct" it if has " ' "a definite, immediate and largely automatic effect on the range of the defendant's punishment." ' " (*Torrey* v. *Estelle* (9th Cir. 1988) 842 F.2d 234, 236.) Such direct consequences include: the permissible range of punishment provided by statute (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605); imposition of a restitution fine and restitution to the victim (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1030 [1 Cal.Rptr.2d 902, 819 P.2d 861]); probation ineligibility (*People* v. *Caban* (1983) 148 Cal.App.3d 706, 711 [196 Cal.Rptr. 177]); the maximum parole period following completion of the prison term (*In re Carabes* (1983) 144 Cal.App.3d 927, 932 [193 Cal.Rptr. 65]); registration requirements (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605); and revocation or suspension of the driving privilege (*People* v. *Dakin* (1988) 200 Cal.App.3d 1026, 1033 [248 Cal.Rptr. 206]).

A consequence is considered "collateral" if it "does not 'inexorably follow' from a conviction of the offense involved in the plea." (*People* v. *Crosby* (1992) 3 Cal.App.4th 1352, 1355 [5 Cal.Rptr.2d 159].) Collateral consequences include: the possibility of enhanced punishment in the event of a future conviction (*ibid.*); the possibility of probation revocation in another case (*People* v. *Searcie* (1974) 37 Cal.App.3d 204, 211 [112 Cal.Rptr. 267]); and limitations on the ability to earn conduct and work credits while in prison (*People* v. *Cortez* (1997) 55 Cal.App.4th 426, 429-431 [64 Cal.Rptr.2d 71]; see also *People* v. *Reed* (1998) 62 Cal.App.4th 593, 597-601 [72 Cal.Rptr.2d 615]).

■ Any commitment Moore may suffer under the SVP Act will be neither a "direct" nor a "penal" consequence of his plea under the foregoing

authorities. Accordingly, the court was not required to advise of the possibility of such a commitment, and there was no abuse of discretion in refusing to allow withdrawal of the plea.[1]

Moore contends that, by virtue of his plea and admissions, he will necessarily be subject to a screening under the SVP Act before his release from custody. The SVP Act provides that "[w]henever the Director of Corrections determines than an individual who is in custody . . . may be a sexually violent predator, the director shall, at least six months prior to that individual's scheduled date for release from prison, refer the person for evaluation." (Welf. & Inst. Code, § 6601, subd. (a).)[2] The individual is then screened by the Department of Corrections and the Board of Prison terms to determine whether he or she is "likely" to be a sexually violent predator. (§ 6601, subd. (b).)

A "sexually violent predator" is defined as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she has received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) " 'Sexually violent offense[s]' " include violations of Penal Code sections 288, subdivision (a) and 288a, if "committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 6600, subd. (b).) " 'Predatory' " is defined as "an act [which] is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)

Although it is not apparent that the current Penal Code section 288, subdivision (a) offense, or the prior Penal Code sections 288, subdivision (a) and 288a offenses Moore admitted, were sexually "violent" within the meaning of the SVP Act, Moore submits that these offenses satisfied the SVP Act's two-victim requirement. Moore also notes that by admitting the Penal Code section 1203.066, subdivision (a)(3) allegation, he admitted "predatory" behavior within the meaning of SVP Act. Moore reasons that because he has admitted sex crimes against two victims, and at least one of the crimes was predatory, he is a person who "*may* be a sexually violent

---

[1]This conclusion is dispositive of Moore's suggestion that his sentence exceeded his plea agreement because he was not told of potential consequences under the SVP Act. The sentence Moore received was consistent with the one indicated at the time of the plea in any event.

[2]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

predator" within the meaning of section 6601, subdivision (a) (italics added), and thus will necessarily be referred by the Director of Corrections for screening under that section.

We will assume without deciding that Moore is correct, and that, by virtue of his plea and admissions, he will automatically be referred for an initial screening under the SVP Act before his release from prison. However, this screening would not necessarily lead to a finding that Moore was a sexually violent predator (hereafter SVP) under the SVP Act. Any such determination would require additional steps and would depend on additional findings which would not be controlled by Moore's plea and admissions herein.

After the initial screening, the proceedings for determining whether a person is an SVP include an evaluation, a probable cause hearing and, finally, a trial. (§ 6601 et seq.) If the Department of Corrections and Board of Prison Terms find that an individual is likely to be an SVP, the person is then referred to the Department of Mental Health for evaluation to determine whether a petition for commitment for treatment should be filed with the superior court. (§ 6601, subds. (c), (d).) If a petition is filed, the judge then holds a hearing to determine if there is probable cause to believe that the person is likely to engage in sexually violent behavior. (§ 6602.) If probable cause is found, a trial is conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.) Persons found to be SVP's cannot be committed for more than two years without additional proceedings. (§ 6604.)

It is apparent from this brief outline of the SVP Act procedures that any finding that Moore is an SVP will not be an "immediate" or "inexorable" result of his plea and admissions in this case. (*Torrey* v. *Estelle, supra,* 842 F.2d at p. 236; *People* v. *Crosby, supra,* 3 Cal.App.4th at p. 1355.) Such a finding would result only from new determinations years in the future of issues such as whether Moore was *at that point* mentally disordered and likely to reoffend (§§ 6600, 6602)—matters which are not admitted by his plea and admissions herein. (See also § 6600, subd. (a) [conviction of the enumerated crimes "shall not be the sole basis for the [SVP] determination"].) Thus, potential commitment under the SVP Act is at most a collateral consequence of the plea and admissions.

Nor would any such commitment be a "penal" consequence of the plea and admissions. (See *Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584].) Although Moore argues at length that the SVP Act is a penal law, that argument has been rejected in *Hubbart.*

Moore notes that a defendant must be advised of the possibility of certain types of civil commitments, and he argues that the same requirement should apply to SVP Act commitments, even if they are not a form of punishment. The commitments to which Moore refers are: those formerly provided for treatment of mentally disordered sex offenders following pleas or findings of guilt (see *Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605 [referring to former § 6302]); commitments for treatment of narcotics addiction (*ibid.* [referring to §§ 3050, 3051]); and commitments following pleas of not guilty by reason of insanity (*People* v. *Lomboy* (1981) 116 Cal.App.3d 67, 68-69 [171 Cal.Rptr. 812]). However, these commitments are distinguishable from those under the SVP Act because they could be ordered by the sentencing court in the case in which the plea is entered. Unlike SVP Act commitments, these commitments are an "immediate" consequence of the plea (*Torrey* v. *Estelle, supra,* 842 F.2d at p. 236), *"in the criminal case itself"* (*People* v. *Harty, supra,* 173 Cal.App.3d at p. 504, italics added).

SVP Act proceedings are more analogous to deportation than the commitment proceedings Moore cites because an SVP commitment, like deportation, depends on additional findings by a different tribunal after the defendant has been sentenced. A defendant must be advised of the possibility of deportation, but that requirement is imposed by *statute* (Pen. Code, § 1016.5), rather than by the " 'judicially declared rule of criminal procedure' " Moore invokes (*In re Carabes, supra,* 144 Cal.App.3d at p. 929). If, as Moore maintains, defendants in his situation should be informed of the potential for such a commitment, the remedy is with the Legislature and not this court.

CONCLUSION

The judgment is affirmed.

Poché, J., and McGuiness, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 31, 1999. Mosk, J., was of the opinion that the petition should be granted.

---

*Presiding Justice of the Court of Appeal, First District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.