Filed 1/15/15  P. v. Mitchell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES CHESTER MITCHELL,<br><br>Defendant and Appellant. | C072566<br><br>(Super. Ct. Nos. CRF11-241<br>& CRF11-630) |

Defendant James Chester Mitchell contends the trial court abused its discretion when it denied his motion to withdraw his no contest plea.  He asserts the court erred because he was not informed prior to entering his plea that a 15 percent limitation on conduct credits under Penal Code section 2933.1 would apply to his sentence.

Defendant also contends the court erred when it failed to dismiss a weapon enhancement as part of the plea, but on which he was not sentenced.

We disagree with defendant's contentions and affirm the judgment.

FACTS AND PROCEDURAL HISTORY

In May 2011, in case No. CRF11-241 (hereafter case No. 241), defendant pleaded no contest to transporting hydrocodone. (Health & Saf. Code, § 11352, subd. (a).) He was placed on Proposition 36 probation. However, in October 2011, the trial court revoked defendant's probation after the probation department filed a petition accusing defendant of violating probation.

In November 2011, apparently over a dispute for payment of tattoo work defendant had performed, defendant pointed a knife at the victim's side and threatened to kill him if he did not pay defendant $100. The victim gave defendant $100. He sustained a superficial cut on his neck. For this crime, the People charged defendant in case No. CRF11-630 (hereafter case No. 630) with first degree robbery (count 1), assault with a deadly weapon (count 2), and making criminal threats (count 3). (Pen. Code, §§ 211; 245, subd. (a)(1); 422.[1]) The complaint also alleged as an enhancement to counts 1 and 3 that defendant used a knife in the crime. (§ 12022, subd. (b)(1).)

Under a plea bargain in case No. 630, defendant pleaded no contest to counts 1 and 2, stipulating to six years on count 1 and four years on count 2. Count 3 was dismissed. The parties agreed the maximum term of imprisonment under the plea agreement was seven years four months. Under a *Cruz*[2] waiver, defendant was released on his own recognizance. If he complied with the waiver's terms, count 1 would be dismissed at sentencing. Any time imposed in case No. 241 would run concurrently to the time imposed in case No. 630. Also, based on his no contest plea in case No. 630,

---

[1]     Undesignated section references are to the Penal Code.

[2]     *People v. Cruz* (1988) 44 Cal.3d 1247, 1254, footnote 5.

2

defendant admitted violating the terms of his Proposition 36 probation in case No. 241, and he stipulated this disqualified him from additional Proposition 36 treatment.

Two of the *Cruz* waiver's conditions required defendant to keep appointments with his probation officer and to appear at sentencing. Defendant failed to keep his appointment with his probation officer, and he failed to appear at sentencing. The trial court issued a bench warrant for defendant's arrest.

Defendant was arrested. After his *Faretta*[3] motion to represent himself was granted, defendant filed a motion to withdraw his no contest plea in case No. 630. He contended his plea agreement was not voluntary and knowing because he was not informed section 2933.1's limitation on custody credits would apply to him if, after violating the *Cruz* waiver, he was convicted on count 1. He also claimed he had a hearing disorder which prevented him from understanding the terms of the plea agreement. The trial court denied the motion.

The court sentenced defendant to six years in prison, calculated as follows: the upper term of six years on count 1, with the middle term on count 2 stayed under section 654. His conviction on count 1, a serious felony, triggered section 2933.1's 15 percent limitation on custody credits. In case No. 241, the court sentenced defendant to the middle term of four years to be served concurrently. The court did not sentence defendant on the weapon enhancement.

Defendant obtained the requisite certificates of probable cause.

---

**3**    *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

3

DISCUSSION

I

*Denial of Motion to Withdraw Plea*

Defendant contends the trial court abused its discretion when it denied his motion to withdraw his plea in case No. 630. He asserts he demonstrated good cause because the record shows his trial attorney and the court did not advise him of section 2933.1's custody credit limit, and it shows his attorney, the prosecutor, and the court implicitly indicated the 15 percent limitation would not apply to him. He claims he would not have entered the plea agreement had he known his sentence would be subject to section 2933.1's credit limit.

Defendant also asserts he did not voluntarily and knowingly enter the plea because, due to hearing loss, he did not understand all that was told him about the plea.

We conclude the trial court did not abuse its discretion when it denied his motion.

A.      *Additional background information*

At the plea hearing in case No. 630, the prosecutor explained the plea bargain to the court. Defendant would plead to count 2, assault with a deadly weapon, as charged, "exposing him to four years," and he would plead to count 1, robbery, stipulating to the upper term of six years. This exposed defendant to a maximum sentence of seven years four months. However, if defendant complied with the terms of the *Cruz* waiver, count 1 would be dismissed, and any time imposed in case No. 241 would run concurrently with his sentence in case No. 630. The parties also stipulated that defendant's plea constituted a violation of his Proposition 36 probation in case No. 241.

After the proposed plea bargain had been explained, the trial court asked defendant whether there was "anything that you've been told that you would get that we did not put on the record right now?" Defendant answered, "No."

4

The court asked defendant if he had reviewed the agreement with his attorney, and if he understood the agreement. Defendant had reviewed it and he understood it. Defendant also stated he understood the terms of the *Cruz* waiver, and that if he violated those terms, he faced a maximum exposure of seven years four months in prison.

Defendant's attorney told the court he had reviewed with defendant the consequences of the plea and any defenses defendant may have had. When asked if he was confident defendant understood those matters, counsel replied, "Yes. Very much so." Counsel joined in the waiver of rights and entry of the plea.

The plea form used by the parties allows someone, preferably defense counsel, to place a check in a box next to each item or statement that applies to the plea. The form directs the defendant to write his initials in a separate box at the end of each statement or item with which he agrees. For any item that does not apply to him or that he does not understand, he is asked to leave the box blank. No one checked the box on the form next to the statement "I understand that jail or prison conduct/work-time credit I may accrue will not exceed 15%."

Defendant indicated on the form he had had a full opportunity to discuss with his attorney, among other matters, the consequences of his plea and anything else defendant thought was important to his case. He also indicated he had no further questions of the court or his attorney regarding his plea and admissions, any of his rights, or anything else on the plea form.

Defendant acknowledged his understanding of the plea agreement in other related forms. In a plea addendum, defendant indicated he understood that if he was convicted of a serious or violent felony, the conviction would mandate he serve his sentence in state prison "with substantially increased penalties." In the *Cruz* waiver form, defendant agreed he would timely report to probation and would appear for sentencing. He also agreed that if he violated any of the conditions of the *Cruz* waiver, the court would not be

5

bound by his plea bargain or any conditions placed on his plea, and he would not have the right to withdraw his plea.

The trial court ruled defendant made a knowing, intelligent, and voluntary waiver of his constitutional rights, and it accepted the plea. It asked the prosecutor and defense counsel whether there was anything further it had not covered. The prosecutor said there was not. Defense counsel asked the court to order defendant not to obtain any new gang tattoos, but he raised no other issues.

Months later, when defendant moved to withdraw his plea, he contended he had not entered his plea knowingly and intelligently. He asserted he suffers from hearing loss, which rendered it difficult for him to understand the court as well as his counsel in the holding room. He attached as an exhibit to his papers an unauthenticated document that purported to be the results of a hearing examination. The examiner concluded defendant suffered from "mild-moderate sensorineural hearing loss" that would make it difficult for him to understand speech, particularly in the presence of background noise.

Defendant asserted he was not informed that if he violated the *Cruz* waiver, he would be convicted of robbery and that, as a result, he would be subject to section 2933.1's conduct credit limitation. He knew violating the *Cruz* waiver would subject him to a sentence of seven years four months, but he mistakenly believed count 1 would be dismissed as part of the plea bargain with or without a *Cruz* waiver. Had he known the true effects of violating the *Cruz* waiver, he asserts he would not have entered into the plea bargain.

The trial court denied defendant's motion to withdraw his plea. Citing *People v. Barella* (1999) 20 Cal.4th 261 (*Barella*), the court held defendant was not entitled to withdraw a plea where the court failed to advise him of a conduct credit limit, a collateral consequence of the plea. The court recalled that at the plea hearing, the courtroom was not crowded. There was no one in the courtroom except the parties. The court had

6

conversations with defendant, and he responded to them several times. He asked questions and made his points known.

The court reviewed the transcript of the plea hearing. Defendant had consistently stated no one had promised him anything other than what was discussed in court, and he understood that if he violated the *Cruz* waiver, he would be facing the full sentence of seven years four months. The court found defendant "was advised of the direct consequences of his plea. He was advised of everything that the Court has to advise him of. And he never once indicated that he had any questions or that any other offer had been made to him other than the offer stated on the record."

B.    *Analysis*

To withdraw his plea, defendant must establish good cause with clear and convincing evidence. (§ 1018.) We review the trial court's denial of a motion to withdraw a plea for an abuse of discretion. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) We find no abuse of discretion here.

"A defendant's guilty plea must be knowing, intelligent, and voluntary. (*People v. Smith* (2003) 110 Cal.App.4th 492, 500.) A plea with those qualities presupposes the defendant knows of all the 'direct consequences' of his plea. (*People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1481.) . . . [¶] A plea's direct consequences are those that ' "follow inexorably" ' from the plea, and may include the permissible range of punishment, imposition of a restitution fine, ineligibility for probation, a maximum parole period, registration as a criminal offender, and revocation or suspension of one's driver's license. ([*Barella, supra*, 20 Cal.4th at p.] 270; *People v. Moore* (1998) 69 Cal.App.4th 626, 630; see also *People v. Arnold* (2004) 33 Cal.4th 294, 309.) A court need not, however, advise a defendant of ' "collateral consequences" ' that do not inexorably follow from a plea. (*Arnold,* at p. 309; *Moore,* at p. 630.) Examples of collateral consequences include the possibility of enhanced punishment in the event of a future conviction, and *limitations on*

7

*one's ability to earn conduct and work credits while in prison.  (Ibid.)*"  (*People v. Aguirre* (2011) 199 Cal.App.4th 525, 528, italics added.)

As defendant admits, our Supreme Court in *Barella* "concluded that a trial court's failure to advise a defendant of the collateral consequences of entering into a plea bargain -- such as a limitation on conduct credits -- does not entitle a defendant to withdraw his no contest plea."  Thus, even if defense counsel, the prosecutor, and the court omitted advising defendant on section 2933.1's credit limits, a point we assume for the sake of argument, defendant would not be entitled to withdraw his plea, as none of those parties were obligated to inform him of the limits.

Defendant contends *Barella* does not apply because here, defense counsel and the court did more than just not inform him; they allegedly misinformed him -- albeit implicitly.  Because neither counsel nor the court checked the box on the plea form next to the statement "I understand that jail or prison conduct/work-time credit I may accrue will not exceed 15%," defendant asserts counsel and the court *implicitly* told him the limitation would not apply.

Defendant's argument fails.  An affirmative misrepresentation regarding eligibility for conduct credits may be grounds for withdrawing a plea.  (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 733-737.)  However, the mere fact counsel did not indicate the credit limitation would apply does not prove he affirmatively advised defendant the limitation would not apply.  There could be other reasons why counsel did not check the box, and there is no evidence put forth by defendant that establishes counsel or the court affirmatively misinformed him the limitation would not apply.  Absent evidence of an affirmative misstatement, the holding of *Barella* governs this case.

In any event, defendant knew he was pleading no contest to a serious felony, and that if he violated his *Cruz* waiver, he would be convicted of that felony and sentenced accordingly.  He specifically understood and agreed that such a conviction would subject him to "substantially increased penalties."  He also knew that if he violated his *Cruz*

8

waiver, he lost any right to file a motion to withdraw his plea. Nevertheless, he violated his *Cruz* waiver, which triggered the consequences to which he had agreed. And his alleged hearing disorder could not have affected his understanding of the written waiver form. Under these circumstances, we conclude the trial court did not abuse its discretion in following *Barella*, enforcing the terms of the *Cruz* waiver, and denying defendant's motion.

In the alternative, defendant contends his attorney rendered ineffective assistance of counsel by not informing him of section 2933.1's application. However, counsel's apparent failure to inform a client of section 2933.1's credit limits before the client enters a plea of no contest is not ineffective assistance. (*People v. Reed* (1998) 62 Cal.App.4th 593, 597-601 (*Reed*).) "[A]n attorney's failure to inform his or her client of the collateral consequences of the client's plea does not constitute incompetent representation under the *Strickland*[4] criteria, and . . . a defendant's lack of information about parole eligibility does not undermine the voluntariness of his or her plea because under federal law such eligibility is a collateral consequence of the plea." (*Reed, supra,* at p. 597.)

Defendant contends *Reed* has been undermined by the United States Supreme Court's reasoning in *Padilla v. Kentucky* (2010) 559 U.S. 356 [176 L.Ed.2d 284] (*Padilla*). In that case, the high court ruled the defendant, a permanent resident, successfully stated a claim for ineffective assistance by alleging his counsel both failed to advise him his guilty plea on drug charges would result in his deportation and told him he would not be deported because he had been a resident for a long time. The court stated it had never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance, but it chose not to address that issue because deportation was an integral part of a penalty imposed on a noncitizen

---

**4**    *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693-694].)

resident. (*Id*. at pp. 359, 364-365.) Because deportation was "uniquely difficult to classify as either a direct or a collateral consequence," the distinction did not apply to a claim of ineffective assistance concerning the risk of deportation. (*Id*. at p. 366.)

Because *Padilla* held only the collateral versus direct distinction does not apply to a claim of ineffective assistance in a deportation case, the distinction, as relied upon by *Reed*, remains valid law in California on a claim of ineffective assistance for failing to advise on a collateral matter. *Padilla* does not apply here, and under *Reed*, defendant cannot raise ineffective assistance in this matter.[5]

## II

### *Failure to Dismiss Weapon Use Enhancement*

Defendant contends the court erred and violated the plea agreement by not dismissing the weapon use enhancement allegations in counts 1 and 3 when the court accepted his plea. The Attorney General agrees the enhancement should have been dismissed pursuant to the plea bargain. Defendant asks us to correct the clerical error and dismiss the enhancement, or allow him to withdraw his plea. We conclude the trial court impliedly dismissed the enhancement in both counts 1 and 3, and find there is no clerical error to correct.

---

[5]     *Padilla* went on to hold an attorney has a duty under the Sixth Amendment to advise a client regarding the risk of deportation due to the client's plea. (*Padilla, supra,* 559 U.S. at pp. 367-369.) The Solicitor General in that case argued ineffective assistance should not lie unless the attorney affirmatively misadvised a client. The high court rejected this argument, holding there was no relevant difference between an act of commission and an act of omission *in the context of deportation*. (*Id*. at pp. 369-370.) Based on this holding in *Padilla*, defendant asserts the distinction we drew above between affirmative misadvising and omitting to advise should not apply in cases involving the failure to advise on custody credit limits. *Padilla's* discussion was limited to cases involving deportation, a matter of "great importance" to clients "least able to represent themselves." (*Id*. at pp. 370-371.) *Padilla* does not apply here.

During the plea hearing, the trial court asked the prosecution whether the weapon use enhancement would be admitted as part of the plea on count 1, the robbery count. The prosecutor replied, "No, Your Honor. It's just the knife itself is an element of the crime." The prosecutor's statement can be read to indicate he was no longer pursuing an enhancement on count 1 based on defendant's use of the knife. The court's subsequent actions confirm this understanding. Other than that reference, the enhancement was not discussed in the plea hearing. The court dismissed count 3, and it did not impose the enhancement as part of accepting the plea of no contest on count 1. It also did not impose the enhancement as part of defendant's sentence on count 1 for his *Cruz* waiver violation. The enhancement is not referenced in the sentencing minute order or the abstract of judgment.

These facts lead us to conclude the trial court dismissed the enhancement as to both counts 1 and 3. Upon receiving the prosecutor's response and thereafter not imposing the enhancement when it sentenced on count 1, the trial court impliedly dismissed the enhancement as to that count. Also, by dismissing count 3 as part of the plea bargain, the court dismissed the enhancement as to that count, as an enhancement cannot stand alone. (*People v. Anderson* (2009) 47 Cal.4th 92, 115.)

Because the sentencing minute order and the abstract of judgment do not reflect the enhancement, they contain no clerical error to correct. The plea agreement was fulfilled, and defendant has suffered no violation of rights.

DISPOSITION

The judgment is affirmed.

    NICHOLSON    , Acting P. J.

We concur:

    ROBIE    , J.

11

_____DUARTE_____, J.