Filed 8/22/16  P. v. Shippen CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C079154 |
| v. | (Super. Ct. No. CRF130070) |
| CAMERON CADE SHIPPEN, | |
| Defendant and Appellant. | |

Pursuant to a plea agreement, defendant Cameron Cade Shippen admitted a violation of Penal Code section 288, subdivision (a)[1], and an allegation of substantial sexual conduct (§ 1203.066, subd. (a)(8)) in exchange for a maximum prison term of eight years.  The trial court sentenced defendant to serve six years in state prison in addition to various fines and fees.  At the same time, the trial court issued an order prohibiting contact with the victim under section 1202.05.

---

[1]     Undesignated statutory references are to the Penal Code.

1

On appeal, defendant does not challenge his conviction or prison sentence. Instead, he argues the trial court's no-contact order was not authorized under section 1202.05 -- a statute that only addresses visitation. He further argues he did not receive proper notice the trial court was considering imposition of a no-contact order. Consequently, defendant urges us to reverse the judgment and remand the matter to allow him to withdraw his plea. He also contends, and the People concede, he is entitled to one additional day of presentence custody credit.

We conclude the trial court erred in ordering defendant to have no *contact* with the victim under section 1202.05, which provides a mandatory bar on *visitation*. We reject the People's suggestion that we modify the no-contact order to state it was imposed under section 136.2, subdivision (i)(1) (section 136.2(i)(1)). Section 136.2(i)(1) requires the court to exercise its discretion in imposing a no-contact order by considering "the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." We reverse to allow the trial court to exercise its discretion under section 136.2(i)(1).

Reversal of the no-contact order, however, does not allow defendant to withdraw his plea. A no-contact order under section 136.2(i)(1) is not punitive in nature and its imposition does not violate the terms of defendant's negotiated plea.

On remand, the trial court shall also award defendant one extra day of presentence custody credit to correct an error in the judgment.

## FACTUAL AND PROCEDURAL HISTORY

An information filed March 5, 2014, charged defendant with committing a lewd and lascivious act with a child under 14. (§ 288, subd. (a).) The information alleged the act involved substantial sexual conduct (§ 1203.066, subd. (a)(8)) and the personal infliction of great bodily injury (§ 12022.7, subd. (a)).

On October 17, 2014, defendant signed a plea agreement to plead no contest to violating section 288, subdivision (a), and to admit substantial sexual conduct, with the great bodily injury allegation to be dismissed. The agreement stated the following factual basis: "In Sutter County, California . . . ; between 2/1/12 and 3/14/12, defendant . . . willfully and lewdly committed a lewd or lascivious act upon or with the body or any part or member thereof, of a child under the age of 14, with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of the said defendant or said child, to wit, defendant had sexual intercourse with victim L.R. . . . which resulted in victim getting pregnant with his child. At the time of the incident, [d]efendant was 33 [years] old and victim L.R. was 13 [years] old. Victim gave birth to defendant's child on November 26, 2012. [¶] The evidence will further show that the defendant had substantial sexual conduct (sexual intercourse) with the victim who was 13 years old at the time." On the same date, defendant entered his plea in open court. The trial court accepted the plea and referred the matter to the probation department for a sentencing report.

At a hearing on December 29, 2014, the trial court continued the matter for sentencing. Defendant's attorney of record was not present, but a deputy public defender appeared specially for him. Noting the sentencing report had not mentioned a required fine, the court informed the parties: "So I believe there should be a fine included *as well as mandatory stay-away orders* and also testing for the AIDS antibodies. So I'll just bring that to the attention of the Probation Department." (Italics added.) The record does not show any revised report was submitted.

Before sentencing took place on March 30, 2015, the trial court read and considered written communications from defendant, defendant's parents, the victim's foster parents, and the victim's therapist. The court also read and considered a

communication by the victim, stating she wanted to reunite with defendant and raise their children together as a family.

In defendant's first letter, he acknowledged "poor judgment," but claimed he "took care of [the victim and her child] both financially and emotionally."

In defendant's second letter, he stated that "the children" were in Washoe County, Nevada, in a foster home, and if granted probation he would be able to see them only on supervised visits. He vowed he would not see or interact with the victim in any way. Finally, he asked the trial court to consider the victim's letter and her thoughts and feelings about the situation.

Defendant's parents asked the trial court to allow defendant to be a part of their lives again and to let him start meeting his responsibilities to the victim's family and his own family.

The victim's foster parents stated they were also the foster parents of her two children, two-year-old D. and nine-month-old N. According to the foster parents, defendant abandoned the victim during her pregnancy and was not present for D.'s birth, but later ran away with the victim to Nevada, where they were caught committing a crime to get something to eat. About a month ago the foster parents discovered the victim had spoken on the phone with defendant two or three times a week for the last three months; they believed he was using these calls to influence and manipulate the victim.

The victim's therapist asserted the victim still hoped for a continued relationship with defendant -- "[a] hope [defendant] has encouraged by continuing to contact [the victim] from jail." In the therapist's opinion, it was "critical to [the victim's] emotional development at this stage" to mature without any influence from defendant.

At the hearing, defendant's counsel argued for the lower prison term. Counsel asserted: The relationship between defendant and the victim had lasted almost three years and produced two children. The victim and defendant had had frequent and

4

continuing contact by letter, as permitted by Child Protective Services in Nevada. The victim, who was "very mature for her age," had also independently contacted defendant's parents. Even though she had been told the relationship with defendant was "inappropriate socially and legally," her letter of November 2014 showed she, as well as defendant, wished to continue the relationship and to "preserve the family unit" they had created. It was reasonable to assume once she reached 18, "we'll have a family unit again."

Defendant's mother stated even though what happened was wrong, "we have two beautiful grandchildren now out of it." The victim was far more mature than people thought; she knew what she wanted and how she felt. Defendant's "family is important to him." Although he had not intended for this to happen, "he just wants to be allowed to be with his children, and they need him too."

Seeking the upper term sentence, the prosecutor argued: After committing a felony in 2008 and a misdemeanor in 2009, defendant had sex with the 13-year-old victim in 2012, then abandoned her when she became pregnant. While law enforcement was still looking for defendant, he met up with the victim in Nevada and made her pregnant again. He did not take any precautions against pregnancy or sexually transmitted diseases. Since the victim and her children entered the Nevada foster care system, defendant has continued to influence and manipulate her with "secretive phone calls," making it difficult for her to imagine a life without him. He told the probation officer he would wait until the victim was of an appropriate age before contacting her again, but instead he had been communicating with her through phone calls from jail.

Defense counsel asserted there was no evidence of phone calls between defendant and the victim.

5

The trial court told defendant: "I really don't care very much what [the victim] thinks. I don't really care very much . . . what her therapist thinks or what her foster parents think. And I'm not terribly interested in what . . . your parents think or what you think. The law is pretty clear. Men who are over 30 are not supposed to be having sex with children . . . 12 and 13 years old. And there's lots of reasons for that. And it makes no sense for me to consider you in a different light from somebody else who had sex with a 12 or 13 year old because you happen to father a child as a result of that. It doesn't make it better for you. I don't know that it makes it worse for you except that I heard your parents say you didn't intend[] for this to happen. Well, [the prosecutor] brings up a good point, there are ways to prevent pregnancy. And as far as I know those ways were not used."

Quoting from one of defendant's letters, the trial court stated: "[Y]ou say, ' "I am being punished for being a dad and creating a child, a beautiful baby boy." ' That's not what you're being punished for . . . . You're being punished, how many times do I need to say it, for having sex with a 12 and 13 year old child which is illegal. It's not illegal to be a dad, it's not illegal to create a child."

The trial court sentenced defendant to serve six years in state prison. The trial court also imposed a no-contact order of unlimited duration.

DISCUSSION

I

*No Contact Order*

Defendant contends his order to have no contact with the victim was erroneously imposed under section 1202.05, a statute that prohibits visitation with victims of certain sex offenses. The People concede section 1202.05 does not provide for no-contact orders. However, the People argue the issue has not been preserved for appeal. The People further argue the no-contact order was authorized by section 136.2(i)(1).

6

Accordingly, the People urge us to modify the no-contact order to state it was made under section 136.2(i)(1). We reverse and remand to allow the trial court to exercise its discretion in considering the factors articulated in section 136.2(i)(1) for the issuance of a no-contact order.

## A.

### *The Order Imposed under Section 1202.05*

During judgment and sentencing, the trial court stated: "And I'm going to order . . . you have no contact with the victim during the time that you are in custody. Parole can figure out whether they want to make that a condition once you are released."

The prosecutor responded by conflating contact and visitation: "[A]s to the order prohibiting *contact*, Your Honor, . . . section 1202.05, that's the Court shall prohibit all *visitations*." (Italics added.)

The trial court replied: "The Court is making that order under 1202.05." However, the trial court did not state whether the order was for no visitation, no contact, or both.

Defense counsel did not object.

An attachment to the sentencing minute order states: "[Defendant] is not to have any contact with the victim while he is in custody pursuant to 1202.05 of the Penal Code."

Subsequently, the trial court entered an "Order Prohibiting Contact (. . . Section 1202.05)" that states: "Pursuant to . . . Section 1202.05, the Court hereby prohibits any contact between the victim of this crime . . . and the defendant . . . ."

## B.

### *Cognizability*

The People contend the issue has not been preserved for appeal because defendant's trial attorney did not object to the no-contact order. We reject the contention.

7

In *People v. Kunitz* (2004) 122 Cal.App.4th 652, this court rejected a similar assertion of forfeiture. *Kunitz* involved a challenge to a statutorily unauthorized restitution fine that may be imposed only on the trial court's consideration of a defendant's individual culpability. (*Id.* at p. 657.) This court considered the merits of the defendant's challenge to the restitution fine even though no objection had first been made in the trial court. (*Ibid.*) The issue was resolved on the merits because no prior objection was needed to preserve an argument that the trial court's restitution order was statutorily unauthorized. (*Ibid.*; accord *People v. Chambers* (1998) 65 Cal.App.4th 819, 823.) The same rationale applies here. Defendant in this case did not need to object in the trial court in order to preserve an argument that the trial court exceeded its statutory authority. Consequently, we consider defendant's argument that the no-contact order was not authorized by the statute relied upon by the trial court.

## C.

### *No-Visitation and No-Contact Orders*

As both defendant and the People note, section 1202.05 does not authorize a no-contact order. Section 1202.05 provides in pertinent part: "Whenever a person is sentenced to the state prison on or after January 1, 1993, for violating Section 288 . . . , and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all *visitation* between the defendant and the child victim." (Italics added.) However, a no-visitation order is different than a no-contact order. (See *People v. Scott* (2012) 203 Cal.App.4th 1303, 1323-1324 [explaining an order prohibiting visitation does not also prohibit contact with the victim].) Moreover, section 1202.05 does not apply once a victim reaches age 18, as the victim in this case will do before the end of defendant's sentence. (*Id.* at pp. 1313-1323.) Although a no-visitation order was mandatory in this case, section 1202.05 did not provide any authority for a no-contact order.

Our conclusion that section 1202.05 did not provide a statutory basis for the trial court's no-contact order requires us to consider the proper disposition. Defendant contends we must reverse and remand in order to allow him to withdraw his plea. The People argue we should modify the order to cite section 136.2(i)(1) and affirm the judgment as modified. As we shall explain, neither disposition is correct.

**D.**

***Whether Defendant Must Be Allowed to Withdraw His Plea***

Defendant contends the no-contact order violated his plea bargain because the trial court did not advise him a no-contact order could be a consequence of his plea, and because the order increased his punishment. On both grounds, he claims to be entitled to withdraw his plea. We disagree.

A defendant is entitled to be advised of the direct consequences of his or her plea, but not of the collateral consequences. (*People v. Villalobos* (2012) 54 Cal.4th 177, 181-182 (*Villalobos*); *People v. Moore* (1998) 69 Cal.App.4th 626, 630.) A consequence of a plea is considered "direct" if it is "penal" in nature; that is, if it definitely, immediately, and largely automatically affects the range of the defendant's punishment. (*Moore,* at p. 630.) A consequence is considered "collateral" if it does not inexorably follow from the defendant's conviction of the offense involved in the plea. (*Ibid*.) Here, the no-contact order does not affect the length or the character of defendant's punishment; nor does it inexorably follow from the fact of his conviction. Thus, it is a collateral consequence of defendant's plea, as to which the trial court did not need to advise him.

The no-contact order is also not a "punishment." It is not death, imprisonment, a fine, removal from office, or disqualification from holding office. (§ 15.) It does not increase defendant's sentence, impose any financial burden on him or her, deprive him or her of property or of any kind of license, require him or her to register, or subject him or her to administrative discipline. (See *Villalobos, supra*, 54 Cal.4th at pp. 182-186;

9

*People v. Vasquez* (2001) 25 Cal.4th 1225, 1230-1231; see generally Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, §§ 180-227, pp. 308-370.) Defendant cites no authority holding a no-contact order constitutes punishment as the term is used in criminal law. He relies on *People v. Olea* (1997) 59 Cal.App.4th 1289, but that case is distinguishable because the defendant there was not informed when he entered his plea that he might be required to register as a sex offender, which is clearly a form of punishment. (*Id.* at pp. 1296-1298.)

**E.**

***Whether We Should Modify the No-Contact Order***

The People urge us to modify the no-contact order to substitute section 136.2(i)(1) for the wrongly cited section 1202.05. As the People correctly point out, section 136.2(i)(1) does provide statutory authority for the sort of no-contact order issued in this case.

Section 136.2(i)(1) provides in pertinent part: "In all cases in which a criminal defendant has been convicted of . . . any crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail or subject to mandatory supervision, or whether imposition of sentence is suspended and the defendant is placed on probation. It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."

Defendant is potentially subject to a no-contact order under section 136.2(i)(1) because he was convicted of violating section 288(a) and must register pursuant to section 290, subdivision (c). And under section 136.2(i)(1), the no-contact order may have a duration of 10 years.

The fact defendant is potentially subject to a no-contact order under section 136.2(i)(1) does not mean he is automatically subject to such an order. Unlike the mandatory no-visitation provision of section 1202.05, the application of section 136.2(i)(1) is discretionary because it requires that "the court, at the time of sentencing, *shall consider* issuing an order restraining the defendant from any contact with the victim." (Italics added.) Moreover, if the trial court decides to impose a no-contact order, it must select a duration for a period not to exceed 10 years "based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." (§ 136.2(i)(1).)

The imposition of a no-contact order under section 136.2(i)(1) requires the trial court to exercise its discretion both as to applicability and duration for any order that cannot be imputed from the reliance on a mandatory visitation statute. "Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) [¶] Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion. (*People v. Belmontes, supra*, 34 Cal.3d at p. 348, fn. 8; *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228-1229.)

Here, the record does not indicate the trial court was aware of section 136.2(i)(1) or any of the considerations the statute requires the court to take into account in determining the duration of a no-contact order. Notably, the no-contact order is

11

unrestricted as to time even though section 136.2(i)(1) limits the order to 10 years. On remand, the trial court shall exercise its discretion in determining whether to issue a no-contact order under section 136.2(i)(1). If the trial court orders no contact under section 136.2(i)(1), it shall select a time duration no longer than 10 years.[2]

## II

### *Presentence Custody Credit*

Defendant contends he is entitled to an additional day of presentence custody credit. The Attorney General properly concedes the point.

Defendant was credited with a total of 607 days of presentence custody credit (528 actual days and 79 conduct days). He was arrested on October 18, 2013, and sentenced on March 30, 2015, after remaining continuously in custody since his arrest. As the parties agree, counting the first and last days of custody equals 529 actual days, not 528. (See *People v. Morgain* (2009) 177 Cal.App.4th 454, 469; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Therefore, defendant is entitled to a total of 608 days of presentence custody credit. We direct the trial court to prepare an amended abstract of judgment reflecting that total.

## DISPOSITION

Defendant's conviction and sentence are affirmed. The no-contact order imposed under Penal Code section 1202.05 is reversed and the matter is remanded for the trial court to exercise its discretion under Penal Code section 136.2, subdivision (i)(1). At the same time, the trial court shall award defendant one additional day of presentence

---

[2] Our conclusion that this case must be reversed and remanded for the trial court to exercise its discretion under section 136.2(i)(1) obviates the need to consider defendant's contention he did not receive proper notice of the possibility of a no-contact order before it was imposed. On remand, he shall be afforded the "meaningful opportunity to object" to which he lays claim in his briefing.

custody credit.  The trial court is directed to prepare an amended abstract of judgment and new no-contact order, if any, and forward them to the Department of Corrections and Rehabilitation.

/s/
HOCH, J.

We concur:

/s/
HULL, Acting P. J.

/s/
RENNER, J.