Filed 3/25/24  P. v. Carabajal CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY BO CARABAJAL,<br><br>    Defendant and Defendant. | A166741<br><br>(Solano County<br> Super. Ct. No. FCR343307) |

Defendant Johnny Bo Carabajal appeals from a judgment entered after the trial court denied both of his motions to withdraw his plea of no contest. He contends this was an abuse of discretion under Penal Code section 1018.[1] We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Underlying Crimes**

Defendant was charged with five felonies:  forcible lewd act upon a child, A.C. (§ 288, subd. (b)(1); count 1); attempted lewd act upon a child, A.C. (§§ 288, subd. (a), 664; count 2); two counts of contacting or communicating

---

[1]    Further unspecified statutory references are to the Penal Code.

We incorporate by reference our decision in Carabajal's prior appeal, *People v. Carabajal* (2022) 86 Cal.App.5th 1 (*Carabajal*).

1

with a minor, E.M., with the intent to commit a sex offense (§ 288.3, subd. (a); counts 3 & 4); and contacting or communicating with a minor, M.J., with the intent to commit a sex offense (§ 288.3, subd. (a); count 5).

The offenses involving E.M. and M.J.—counts 3 through 5—were severed from the two offenses involving A.C. and proceeded to trial. In early 2020, a jury convicted defendant of these three charges. Defendant was sentenced to two years and two months in prison. We affirmed. (*Carabajal, supra,* 86 Cal.App.5th 1.)

During the pendency of that appeal, trial was set for the two remaining counts involving A.C., counts 1 and 2. At a pretrial conference in late June 2021, the trial court indicated it understood there was a viable plea deal. Accordingly, it granted a one-week continuance for defendant "to think about the offer."

## B. No Contest Plea for Offenses Involving A.C.

Trial was scheduled to begin on July 7, 2021. That morning, with defendant present, the trial court stated that "for everyone's information and so [defendant] hears this, [the] offer is going to be off the table today since the jury trial is going to go forward." Before moving forward, the court inquired whether defendant was "aware of what the offer is," which the prosecutor explained required a no contest plea to count 1 in exchange for dismissing count 2 with a *Harvey* waiver[2] and resentencing defendant's previous convictions for counts 3–5 to run concurrently with the newly imposed sentence for a total of five years. And the court asked if defendant knew "what [his] maximum exposure is." Then—based on defense counsel's representation that defendant "already served over two [years]" and "had

---

[2]     A *Harvey* waiver allows the court to consider dismissed charges for purposes of sentencing. (Cf. *People v. Harvey* (1979) 25 Cal.3d 754, 758–759.)

about a year remaining"—the court estimated that defendant had "about a year actual time if, in fact, he would accept the offer." Defense counsel verified that was "[c]orrect." Defendant affirmed that he understood the plea offer.

Even so, defendant rejected the offer. The trial court restated the offer was "off the table" because "our [jury] panel will be coming in at 1:30." The prosecutor confirmed the offer was revoked.

Shortly thereafter, defense counsel requested a sidebar to revisit the plea offer. Following the sidebar, the trial court again addressed defendant to "make sure that [he understood] what [was] taking place." The court recapped defendant's maximum exposure, the terms of the offer, and the approximate amount of "actual time" defendant would serve. The court further said it did not oppose defendant entering a plea without admitting to the underlying factual basis pursuant to *People v. West* (1970) 3 Cal.3d 595.

Following an exposition of a *West* plea and the approximate sentencing subject to credit calculation, the trial court gave defendant additional time to consider the offer and review the rights waiver form with counsel. After the recess, defendant agreed to resolve the case, reiterating he only did so on the condition that he did not admit to the underlying facts of the plea and because he "want[ed] desperately to get back to his minor children."

During the plea colloquy, the trial court confirmed that defendant had adequate time to review the written waiver of his constitutional rights. The court then walked through defendant's waived rights as well as the general structure of the plea.

Finally, before accepting the plea, the trial court addressed a separate concern regarding a dependency case involving defendant's son, which was being handled by a different court. The court asked defendant if he

3

understood that entering a *West* plea in this case "may or may not have an effect on what happens in dependency court?" Defendant answered "Yes."

Accordingly, the plea was accepted, and sentencing was scheduled several months out to allow for a "credit calculation."

**C. Defendant's Motions to Withdraw his Plea**

In February 2022, before the sentencing hearing, defendant moved to withdraw his no contest plea. He asserted that "but for his belief that he would be able to reunify with his minor son and re-establish their bond within approximately a year from the date of sentencing, he would not have entered the plea." The only evidence proffered in support of the claim was a declaration by trial counsel, who vouched for defendant's claims solely on her own information and belief.[3]

In late May 2022, the trial court denied defendant's motion. First, the court concluded defendant failed to present "clear and convincing evidence" of any mistake, prejudicial or otherwise, that overcame his exercise of free judgment. Second, the court found defendant failed to show he was not properly advised of either the direct or collateral consequences of his plea.

In late September 2022, defendant, represented by new counsel, filed a second motion to withdraw his no contest plea, asserting good cause based on his mistaken belief that his daughter, S.C., had been planning to testify that he had committed offenses against her.[4] Defendant made no mention of this

---

[3]     Prior to the motion being heard, the public defender's office moved to challenge the trial court judge for cause. The claims underlying the motion were unrelated to defendant's case, but the motion alleged the judge was disqualified from adjudicating public defender cases, including this one. In March 2022, a different superior court judge denied the motion, and this matter proceeded.

[4]     Defendant was appointed new counsel because a conflict arose for the public defender originally assigned to the case. The trial court permitted the

claim in his previous motion to withdraw his plea. But like his previous motion, the statement of facts was based solely on a declaration of counsel, which asserted the sincerity of defendant's beliefs but offered no facts or explanation as to the source of defendant's misinformation.

In October 2022, the trial court denied the second motion to withdraw and sentenced defendant to five years in prison, which with credits meant he was required to serve one year and three months of actual prison time upon entering the plea. The court did not give credence to defendant's new alleged mistaken belief because there was no mention of S.C. at any time during the first trial—involving the offenses against other minors—or the pretrial conferences in this case. Moreover, because defendant offered no facts or evidence indicating how he came to be misinformed about testimony of S.C., the court rejected the assertion of good cause.

Defendant timely appealed and obtained a certificate of probable cause.

## DISCUSSION

Section 1018 allows a no contest plea to be withdrawn before judgment for "good cause shown." To show good cause, the defendant must present "clear and convincing evidence" of mistake or ignorance "overcoming the exercise of free judgment." (*People v. Patterson* (2017) 2 Cal.5th 885, 894 (*Patterson*).) "[C]lear and convincing evidence denotes proof that is clear, explicit, and unequivocal and leaves no substantial doubt." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 402, questioned on other grounds in *People v. Mabini* (2001) 92 Cal.App.4th 654, 662.) "The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin* (2012) 205 Cal.App.4th

second motion because it had allowed the original counsel time to file a motion for reconsideration of the court's ruling, which she failed to do.

5

1409, 1416 (*Breslin*).) When evaluating such a claim, the trial court does not need to accept the defendant's self-serving statements. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1253–1254 (*Fairbank*).) We review an order denying a motion to withdraw a guilty plea under section 1018 for abuse of discretion. (*Patterson*, at p. 894.)

On appeal, defendant appears to advance four allegations undergirding his motions to withdraw. We address each claim and find all without merit.

*1. Alleged Mistake Regarding Impact on Dependency Matter*

First, defendant claims he should have been permitted to withdraw his plea because he "erroneously believed that the plea would not impact the case regarding custody and visitation with his 10-year-old son." But defendant fails to show an abuse of discretion. (Cf. *Patterson*, *supra*, 2 Cal.5th at p. 894.) In this regard, the record is bereft of facts supporting the basis for defendant's belief, and the trial court was free to discredit the declaration of defendant's attorney asserting summarily that defendant's belief was genuine.[5] (*Fairbank*, *supra*, 16 Cal.4th at pp. 1253–1254.)

Just as the record lacks any explanation or corroboration of defendant's mistaken belief, he makes no showing that his plea actually or necessarily affected the outcome of the dependency matter. Indeed, defendant had already been convicted of three sex offenses involving two other minors.

Nor is there any factual merit to defendant's charge that the trial court misrepresented the potential impact of the plea to the dependency matter involving his son. To the contrary, the court explained to defendant that the plea "***may*** or may not have an effect on what happens in dependency court."

---

[5] The prosecution argues these declarations are inadmissible hearsay. But no objection was made in the trial court, so this argument was forfeited. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725.)

Moreover, any perceived deficiency or mistake in the trial court's advising on this point was at most a matter involving a " 'collateral' " or " 'indirect' " consequence of defendant's plea, which does not compel a reversal. (*People v. Moore* (1998) 69 Cal.App.4th 626, 630.) The court's obligation to advise extends only to " 'penal' " or " 'direct consequences of conviction,' " which are those that have " 'a definite, immediate and largely automatic effect *on the range of the defendant's punishment.*' " (*Ibid.*, emphasis added; see *id.* [the possibility of probation revocation in another case is a " 'collateral' " consequence].) Defendant makes no claim that the resolution of the dependency case had an impact on his punishment; nor has he cited any authority establishing that his plea would in some way be dispositive in the dependency proceedings. This distinguishes the instant facts from those in *Patterson*, where the defendant presented evidence that the conviction subjected him to mandatory deportation. (*Patterson*, *supra*, 2 Cal.5th at p. 898.)

The trial court did not abuse its discretion in rejecting this claim.

*2. Alleged Mistake Regarding Length of Sentence*

Next, defendant contends a reversal is required because he erroneously believed he would be out of custody "within one year" of entering his plea. But again, defendant does not substantiate this claim with any supporting facts or evidence. Defendant's post-plea dissatisfaction with his sentence "is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 104.)

In advancing this claim, defendant asserts "it is uncontested that both the court and counsel represented" he would be released from custody "within

a year" of entering the plea.[6]  The plea transcript, however, belies this contention.  Specifically, the record shows the trial court repeatedly stated defendant's resentencing would result in a term of imprisonment of "about" one year but made clear that "sentencing probably would not take place today because we need some additional information" for credit calculation.  Defendant does not contest the correctness of the calculation that he was required to serve one year and three months of actual prison time upon entering the plea.

Moreover, to the extent defendant apparently miscalculated his credits, such miscalculation is not good cause for withdrawal.  (*Breslin, supra*, 205 Cal.App.4th at p. 1417 [" ' "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his [or her] decision" ' "].)  Defendant also fails to establish that he would not have accepted the plea bargain had he correctly calculated his credits.  This is independently fatal to his quest for relief.

*3.  Alleged Mistake Regarding Additional Testimony*

Defendant also argues he entered his plea because he was informed incorrectly that his other daughter, S.C., would testify against him.  Though first raised in defendant's second motion, it lacked any supporting facts or explanation, despite months-long delays allowing for defendant's newly assigned counsel time to investigate the basis of a second motion to withdraw.

---

[6]    The attorney declarations attached to the two motions to withdraw did *not* assert that counsel erroneously advised defendant.  We do not understand defendant as additionally asserting a claim of ineffective assistance of counsel.

Again, the only evidence defendant submitted was his newly assigned attorney's declaration. This declaration provided no information regarding the source of defendant's misinformation. Nor did the declaration substantiate prejudice. Given the absence of clear and convincing evidence demonstrating mistake or prejudice, the court did not abuse its discretion in refusing to grant the second motion to withdraw. (Cf. *Patterson*, *supra*, 2 Cal.5th at p. 894.)

### 4. *Allegations of Undue Judicial Pressure and Bias*

Beyond the foregoing contentions articulated in defendants' two motions to withdraw, defendant's appellate briefing raises concerns of judicial coercion and bias. These issues were not raised below, but " ' "[t]he fact that a party, by failing to raise an issue below, may forfeit the right to raise the issue on appeal does not mean that an *appellate court* is precluded from considering the issue." ' " (*In re Luis F.* (2009) 177 Cal.App.4th 176, 184.) Given the gravity of potential judicial impropriety, we elect to address these allegations. Nonetheless, we find them unfounded.

First, defendant suggests "the ongoing dispute between the Judge and the public defender's office regarding the Judge's bias" may have "complicat[ed]" his plea. We note this assertion lacks a separate heading and is conclusorily made without supporting argument. (*People v. Dain* (2024) 99 Cal.App.5th 399, *819–820 [raising a point without a separate heading or subheading and supported by argument violates Cal. Rule of Court, rule 8.204(a)(1)(B)].)

Second, there appears no merit to defendant's assertion that the trial court either coerced defendant to enter the plea or stated it "would allow the plea to be made pursuant to *People v. West* to dissuade [defendant] from believing that his plea would be held against him during the proceedings

9

involving his son." The record shows that, following a sidebar requested by defense counsel to revisit the previously-rejected plea offer, the court addressed defendant "to make sure that [he] underst[ood] what it is that [was] taking place." Specifically, the court explained to defendant that the function of a *West* plea was to allow him to avoid an express admission of guilt and merely consent to be punished due to the risk of harsher sentence following a conviction by a jury. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1374.)

Contrary to defendant's suggestion, the trial court did not inappropriately "pressure" him into accepting the plea offer. As the record reflects, the court was simply cautioning defendant that the offer would expire upon the start of the trial. Moreover, these circumstances do not detract from the fact that defendant already had a week to consider the offer, and additionally, was afforded a recess to further consider the deal. On this record, defendant's pretrial hesitation in entering the plea was not sufficient to demonstrate it was involuntary. (See *People v. Hunt*, *supra*, 174 Cal.App.3d at p. 103.)

Defendant's reliance on *People v. Weaver* (2004) 118 Cal.App.4th 131 (*Weaver*) and *People v. Sandoval* (2006) 140 Cal.App.4th 111 (*Sandoval*) is unavailing. In *Weaver*, judicial coercion was evidenced by a litany of improper remarks made by the court after discussing images found on the appellant's computer, including: " 'off the cuff' it appeared appellant was a pedophile"; once "a jury saw the victims 'and we take all this ugliness and put it out on the table and put it out there it's a lot different than right now' "; and " '[a]s soon as the first little girl in the pink dress sits down, you know, then you're going to see the real victim. You'll see the real impact.' " (*Weaver*, at pp. 135–136.) Those comments, along with many others which

were more inappropriate, led the appellate court to conclude the trial court "abandon[ed] its judicial role and thrust[] itself to the center of the negotiation process and [made] repeated comments that suggest a less-than-neutral attitude about the case or the defendant," thus resulting in "great pressure" for the appellant "to accede to the court's wishes" for a plea. (*Id*. at p. 150.) In *Sandoval*, a co-defendant admitted that he threatened to kill the defendant if he did not take the plea. (*Sandoval*, at pp. 121–122.)

Nothing in this record comes close to such remarks or physical threats. Even if it can be said the trial court intended to encourage a plea bargain, that alone is insufficient. (See *Weaver*, *supra*, 118 Cal.App.4th at pp. 146–149.) Here there is no evidence of coercion or involuntariness. Accordingly, we see no basis for requiring withdrawal of the plea on this basis.

In sum, defendant's motions to withdraw his plea failed to present clear and convincing evidence in support of any of his contentions. Thus, defendant has not established that the trial court abused its discretion in denying the motions.

## DISPOSITION

The judgment is affirmed.

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P.J.


_____

Rodríguez, J.

*People v. Carabajal* (A166741)